UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | * | CASE NO.: 19-12337 |
| | * | |
| ROYAL ALICE PROPERTIES, LLC | * | SECTION "A" |
| | * | |
| Debtor | * | CHAPTER 11 |
| | * | |
| ****************************************** | | |
| | * | |
| | * | |
| ROYAL ALICE PROPERTIES, LLC | * | |
| | * | |
| Plaintiff | * | ADV. NO.: 19-_____ |
| v. | * | |
| | * | |
| AMAG, INC. | * | |
| | * | |
| Defendant | * | |
| ****************************************** | | |

**COMPLAINT FOR DECLARATORY RELIEF**

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff Royal Alice Properties, LLC, debtor-in-possession ("Plaintiff"), who alleges:

**PARTIES**

**1.**

Royal Alice Properties LLC ("RAP") is a limited liability company organized under the laws of the State of Louisiana. On August 28, 2019, RAP commenced the above-captioned bankruptcy case by filing a voluntary petition for relief under chapter 11 of the United States

Bankruptcy Code, 11 U.S.C. §§ 101, *et seq*. All membership units of RAP are owned by Susan Hoffman.

**2.**

By contribution from Mrs. Hoffman prior to commencement of these proceedings, RAP owns the real property commonly known as 900 Royal St. ("900 Royal") located in Orleans Parish State of Louisiana. By acquisition from an affiliate of Mrs. Hoffman prior to commencement of these proceedings, RAP owns two Condo Units abutting 900 Royal, both in Orleans Parish, State of Louisiana, to wit: (a) Unit E of the Miltonberger Homeowners Association located at 906 Royal Street; and (b) Unit C of the Princess of Monaco Homeowners Association located at 910-912 Royal Street. The foregoing parcels of real property are referred to herein as the Subject Property.

**3.**

AMAG is a corporation organized under the laws of the State of California, with its principal place of business in the County of Los Angeles, State of California and, upon information and belief, is not licensed to do business in the State of Louisiana.

## INTRODUCTION

**4.**

Pursuant to Fed. R. Bankr. P. 7001(9), Plaintiff seeks declaratory relief with respect to the validity, priority or extent of a lien on the Subject Property. In particular:

**A.** The interest and loan discount charged by Defendant, AMAG, Inc. ("AMAG"), pursuant to that certain Secured Promissory Note ("Note") and Loan Agreement ("Loan Agreement"), both dated July 1, 2013, in the approximate amount of $2,685,000.00 (interest) and

$366,250.00 (loan discount) ("Interest"), is usurious and subject to forfeiture, pursuant to La. R.S. 9:3501, because the Loan Agreement was not for commercial, business, or agricultural purposes. A true and correct copy of the Note and Loan Agreement are attached hereto as Exhibits "A" and "B," respectively. Mrs. Hoffman and Peter Hoffman are obligors under the Note. Mr. and Mrs. Hoffman are married but separated by a Judgment of Separation issued by the Superior Court of the County of Los Angeles, State of California dated July 16, 2007.

      **B.**      The default interest charged by AMAG, pursuant to the Note and Loan Agreement is in excess of the maximum amount of default interest permitted by La. R.S. 9:3509B(1)(b) by an amount no less than $500,000.00 ("Illegal Default Interest").

      **C.**      The balance claimed by AMAG as due, pursuant to the Loan Agreement as of August 31, 2018, is approximately $4,600,000.00 ("Loan Balance"). This Loan Balance improperly:

      **1.**      Includes $366,250.00 plus interest thereon, reflecting a simulated sale of 36,625 shares of worthless preferred stock of Seven Arts Entertainment, Inc. ("Preferred") from AMAG to Mrs. Hoffman, which is a nullity for lack of proper form.

      **2.**      Fails to credit the sum of $392,000.00 paid to AMAG on behalf of Mr. Hoffman from the foreclosure sale of his home in Los Angeles, California plus interest thereon since received by AMAG ("Foreclosure Credit").

      **3.**      Includes the Interest and Illegal Default Interest.

      **D.**      The amount due and payable under the Loan Agreement which may be legally collected by AMAG does not exceed $580,000.00, comprised of the original principal amount

($3,137,000.00), less payments made by Mr. and Mrs. Hoffman ($1,801,000.00), the cost of the bogus Preferred purchase ($366,250.00), and the Foreclosure Credit ($392,000.00).

## JURISDICTION and VENUE

**5.**

This Court has jurisdiction over this proceeding under 28 U.S.C. § 1334 because the claims "arise in" or "relate to" the RAP Bankruptcy Case.

**6.**

This Court has personal jurisdiction over AMAG by consent, pursuant to Paragraph 12 of the Loan Agreement and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this federal district and pursuant to 28 U.S.C. § 1409 because the claims "arise in" or "relate to" the RAP Bankruptcy Case pending in this federal district.

**7.**

Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this federal district, pursuant to 28 U.S.C. § 1409 because the claims "arise in" or "relate to" the RAP Bankruptcy Case pending in this federal district and pursuant to Paragraph 12 of the Loan Agreement.

## GENERAL ALLEGATIONS

**8.**

<u>No Commercial or Business Purpose</u>.  The purpose of the Loan Agreement, as set forth therein, is to: (a) acquire the two mortgages then existing on the Subject Property from Whitney Bank; (b) settle certain judgments ("Jonesfilm Judgment") against Peter Hoffman for attorney fees

which created a cloud on Mrs. Hoffman's and RAP's title to the Condo Units ; and (c) acquire the Preferred as a subterfuge to increase the interest due on the Note.

9.

RAP and Mrs. Hoffman did not seek, and did not obtain, the advances under the Loan Agreement for commercial, business, or agricultural purposes within the intendment of La. R.S. 9:3509A.

10.

The principal purpose of the advances under the Loan Agreement was to refinance the mortgage on 900 Royal, Mrs. Hoffman's personal residence, and to remove a cloud on her title to 900 Royal. The secondary purpose of the advances under the Loan Agreement was to refinance the mortgage on the Condo Units and to remove a cloud on its title to the Condo Units. Mrs. Hoffman is not in the business of refinancing mortgages.

11.

The "warranty" by Mrs. Hoffman and RAP that the advance under the Loan Agreement was for commercial or business purposes is null against public policy and an illegal attempt to disguise a usurious loan.

12.

The Interest charged in the Loan Balance is usurious under La. R.S. 9:3503, because the Loan Agreement is an obligation secured by immovable property, and the Interest is in excess of twelve percent (12%) simple per annum interest.

13.

The Illegal Default Interest charged in the Loan Balance is usurious under La. R.S. 9:3509(B)(1)(b), because it is more than twenty-one percent (21%) simple interest per annum.

**14.**

<u>The Preferred</u>. The Preferred was and is worthless when acquired by Mrs. Hoffman from AMAG. Although the Stock Purchase Agreement memorializing the transfer of the Preferred purported to be a sale, it was a simulation. Mrs. Hoffman had no interest in acquiring the Preferred from AMAG and was forced to do so as a condition to the Loan Agreement. Mr. Hoffman separately owned more than $2,000,000.00 of SAE preferred stock, which was also worthless.

**15.**

AMAG acquired the Preferred for $366,250.00 as a condition to the conversion into common stock ("Conversion Stock") of approximately $4,500,000.00 of indebtedness owed to that affiliate by Seven Arts Entertainment, Inc. ("SAE") at a time when SAE common stock was publicly traded on NASDAQ and the OTC.

**16.**

Investment banks engaged by SAE ("Banks") had insisted on the original purchase of the Preferred by the AMAG affiliate as a condition to the public sale of the Conversion Stock. Banks sold the Conversion Stock and paid in excess of $4,000,000.00 to AMAG's affiliate as the proceeds of such sale.

**17.**

At the time that AMAG entered into the Loan Agreement with Mrs. Hoffman, SAE had effectively ceased business and was in negotiations later completed to assign all of its film assets

to AMAG's affiliates to settle the then remaining balance of SAE's indebtedness to AMAG's affiliate.

**18.**

At the time that AMAG entered into the Loan Agreement with Mrs. Hoffman, AMAG knew the Preferred was worthless and sought to recover its purchase price of the Preferred by forcing Mrs. Hoffman to acquire the Preferred.

**19.**

Additionally, there was no actual transfer of funds between AMAG and Mrs. Hoffman, because the purported purchase price of the Preferred was paid directly to AMAG by AMAG.

**20.**

Mrs. Hoffman was under economic duress at the time she entered into the Loan Agreement, because Whitney had threatened to accelerate the mortgages and foreclose on Mrs. Hoffman's personal residence and RAP's investment property. Mrs. Hoffman was not able to obtain conventional mortgage financing at that time because of a then ongoing investigation by the United States Attorney's Office.

**21.**

Accordingly, the Share Transfer Agreement is a simulated sale, which would have to be valid as a donation if it were valid at all under Louisiana law.

**22.**

However, the Share Transfer Agreement cannot be valid as a donation because it is not itself an authentic act.

**23.**

Because Mrs. Hoffman's purchase of the worthless Preferred from AMAG is void, the resulting increase of the Loan Balance by $366,250.00 can only be considered interest, and cannot itself accrue interest.

**24.**

<u>Foreclosure Credit</u>.  On or about October 21, 2016, pursuant to a settlement agreement dated September 22, 2016, Mr. Hoffman authorized the foreclosure sale of his then principal residence located at 1643 Queens Road ("Queens Road") in Los Angeles by his principal lender, Chase Bank, solely in order to permit AMAG to either acquire Queens Road for a beneficial price less than its fair market value or to obtain the excess proceeds from the foreclosure sale, in either case for the benefit to be applied to reduce the Loan Balance.

**25.**

On or about June 1, 2017, an affiliate of AMAG received the sum of $392,779.75 from the sale of Queens Road as the Foreclosure Credit.  Despite demand to do so, AMAG has failed and refused to apply the Foreclosure Credit to reduce the Loan Balance.

**26.**

As of June 1, 2017, neither AMAG nor its affiliates had any enforceable obligation against Mr. Hoffman except his guarantee of the Note and Loan Agreement, because the California statute of limitations had expired on any other former obligations of Mr. Hoffman to AMAG or its affiliates.

**27.**

AMAG is equitably estopped to deny credit of the Foreclosure Credit against the Loan Balance, because Mr. Hoffman would not have agreed to a settlement agreement providing for the foreclosure sale of Queens Road absent credit of any excess proceeds against the Loan Balance, and because AMAG was aware of Mr. Hoffman's understanding and intention.

## CAUSE OF ACTION FOR DECLARATORY RELIEF

### 28.

A controversy has arisen and now exists by and between AMAG and Plaintiff. Plaintff contends:

**A.** The Interest charged in the Loan Balance is usurious and must be forfeited pursuant to La. R.S. 9:3501.

**B.** The Illegal Default Interest is usurious and must be forfeited pursuant to La. R.S. 9:3509B(1)(b).

**C.** The Loan Balance must exclude $366,250.00 as the purchase price of the Preferred and any interest charged thereon, because the Share Transfer Agreement is unenforceable and null for want of form.

**D.** The Loan Balance must be reduced by the Foreclosure Credit plus interest from the date received at the rate provided in the Loan Agreement.

### 29.

AMAG disputes and denies each of Plaintiff's contentions as herein alleged.

### 30.

Plaintiff is entitled to a declaratory judgment that: (a) the Loan Balance is no greater than

$580,000.00; (b) AMAG may not enforce any greater amount in its collection of the Loan Balance; and (c) upon payment of no more than $580,000.00 the Note and all security interests granted by the Loan Agreement shall be cancelled and satisfied.

**WHEREFORE**, Plaintiff Royal Alice Properties, LLC, prays for declaratory judgment against Defendant AMAG, Inc., as herein requested and for any other legal or equitable relief this Honorable Court is permitted to grant.

Respectfully submitted,

*/s/ Philip H. Stillman*
_____
**STILLMAN & ASSOCIATES**
**PHILIP H. STILLMAN (Cal.152861)** (***pro hac vice** pending*)
**3015 N. Bay Rd. Ste B**
**Miami Beach, FL 33140**
**Tel: (888) 235-4279**
 **pstillman@stillmanassociates.com**

*Proposed Counsel for Plaintiff Royal Alice Properties, LLC*

and

**CONGENI LAW FIRM, LLC**
LEO D. CONGENI (#25626)
424 Gravier Street
New Orleans, LA 70130
Telephone: 504-522-4848
Facsimile: 504-910-3055
Email: leo@congenilawfirm.com

*Counsel for Royal Alice Properties, LLC*