## LOAN AGREEMENT

FILED

THIS LOAN AGREEMENT ("**Agreement**") is entered into as of this 31st day of July 2013 ("**Effective Date**"), by and among AMAG, INC., a California corporation and Finance Lender ("**Lender**"), located at 233 Wilshire Blvd, Suite 200, Santa Monica, California 90401, and SUSAN H. HOFFMAN, an individual, and ROYAL ALICE PROPERTIES, LLC, a Louisiana limited liability company, jointly and severally, ("**Borrowers**"), both located and domiciled at 900 Royal Street, New Orleans, Louisiana 70116.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. LOAN: Lender has acquired the outstanding balance of loans owed by Susan H. Hoffman and Peter Hoffman to Whitney Bank, the successor-in-interest to Hancock Bank of Louisiana, and Lender has been induced by Borrowers to (i) amend the terms of such existing loans and (ii) to make additional loans to Borrower all as described hereunder, in an aggregate amount not to exceed the principal amount of $3,166,000.00 (the "**Loan**") to Borrowers, with such additional lending to be exclusively for the following purposes: (i) providing funds for Susan H. Hoffman to purchase 36,625 shares of Series A Convertible Exchangeable Preferred Stock of Seven Arts Entertainment, Inc. ("**Stock Purchase**"), and all other costs, expenses and fees required pursuant to this Agreement (collectively the "**Initial Advance**"). Lender has also agreed to provide additional advances, subject to the conditions set forth in this Agreement, to allow the Borrowers to obtain the removal of all liens, encumbrances, notices of lis pendens, judgments, orders and adverse filings, if any, currently being pursued by Jonesfilm against the property owned by Borrowers in the state of Louisiana and to provide funds to pay attorney fees, cost and other expenses to pursue certain litigation currently pending in England ("**Content Litigation**"), which additional advances are referred to in this Agreement as "**Additional Advances**". Borrowers warrant and represent that the Loan will be used exclusively for business and commercial purposes and is not being used for personal or household purposes.

b. This (i) Agreement, (ii) the Secured Promissory Note of even date herewith (the "**Note**"), (iii) the Mortgages being transferred pursuant to the Sale and Transfer of Note and Security Therefor Without Recourse by Whitney Bank, as successor-in-interest to Hancock Bank of Louisiana, to Lender, in the form attached to this Agreement as Exhibit A and incorporated by this reference, (the "**Mortgages**"), (iv) a Continuing Personal Guaranty from Peter M. Hoffman ("**Guaranty**") and (v) all other documents and agreements executed by Borrowers in connection with the Loan, all of which may hereinafter be referred to collectively as the "**Loan Documents**."

2. CONDITIONS OF FUNDING:

Lender's obligation to make each and every advance of the Loan shall be subject to the occurrence of each of the following conditions:

a. Receipt by Lender of all original Loan Documents properly executed by each of the parties thereto in a form acceptable to Lender, including, but not limited to the following: (i) this Agreement, (ii) the Note, (iii) the Guaranty, (iv) the Stock Purchase Agreement in a form

LOAN AGREEMENT - Page 1

07616.0143



acceptable to the seller for the Stock Purchase, (v) the deposit of the fully executed Sale and Transfer of Note and Security Therefor Without Recourse between Whitney Bank, as successor-in-interest to Hancock Bank of Louisiana and Lender, and (vi) any other fully executed documents reasonably required to effectuate the terms of this Agreement in Lenders sole discretion;

    b.    Lender and Borrower have agreed the proceeds of the Loan shall only be used in accordance with the "**Loan Proceeds Schedule**," attached to this Agreement as Exhibit B, and incorporated by this reference;

    c.    The issuance of certificates of insurance naming Lender as a "Loss Payee" and "Named Insured," in forms that are satisfactory to Lender; and

    d.    There has been no "**Event of Default**" as described below.

3. REPAYMENT:

All amounts owed by Borrower pursuant to the Note and this Agreement are repayable on or before the Maturity Date as that term is defined in the Note ("**Maturity Date**").

    a.    Without limiting Lender's right to receive payment on the Maturity Date, Lender shall have the unconditional and irrevocable right to demand full or partial repayment upon the occurrence of any of the following events ("**Events of Default**"):

        i.    Borrowers fail to make any payment required pursuant to the Note;

        ii.    Borrowers sell, assign, convey, encumber, hypothecate, or otherwise transfer or alienate any of the real property encumbered by the Mortgages without the express written permission of Lender, which Lender may withhold in its sole discretion;

        iii.    Borrowers are unable to pay their debts within the meaning of the applicable bankruptcy laws or either of them files (or is subject to an involuntary filing) any sort of petition for bankruptcy relief;

        iv.    Borrowers suspends payments of its debts or commences negotiations for the readjustment or rescheduling of its debts;

        v.    Borrowers or Guarantor breaches any agreement, or fails to fulfill any obligation, contained in this Agreement, the Note, any other Loan Document; or

        vi.    Borrowers have given Lender false or misleading information or have failed to disclose material facts that might be relevant to Lender.

    b.    Upon the occurrence of any Event of Default, the following consequences shall occur:

      i. Lender may terminate making any further advances under this Agreement;

      ii. Lender may immediately commence enforcement of the Loan, including by foreclosing on the Mortgages and Lender may exercise all of the rights and remedies of a secured creditor under applicable law;

      iii. The Loan shall bear interest at the default rate of 18% per annum in accordance with the Note;

      iv. Lender shall be entitled to the appointment of a receiver to take immediate possession of the real property encumbered by the Mortgages; and

      v. Lender shall have the right to apply any amounts in reserve against the Loan.

4. INTEREST, LOAN FEE AND PROPERTY INSPECTION EXPENSES:

    a. As compensation to Lender for extending the Loan, Lender will be entitled to interest on the outstanding principal balance of the Loan that has been advanced by Lender and remains unpaid in accordance with the Note.

    b. At the time of closing, Borrowers shall pay to Lender a loan initiation fee ("**Loan Fee**") in the amount of $15,830.00, which is equal to one-half percent of the maximum potential principal amount being loaned of $3,166,000.00 pursuant to this Agreement, the Note and the other Loan Documents.

    c. At the time of closing, Borrowers shall reimburse Lender for all Property Inspection Expenses incurred by Lender related to the Loan.

5. ADDITIONAL ADVANCES:

    a. It is currently anticipated that the Borrowers will receive the Additional Advances described in this Agreement. Interest on the Additional Advances shall not begin to accrue until those amounts have been actually advanced.

    b. Because the lien claims being asserted by Jonesfilm may ultimately be determined to be valid encumbrances against the property owned by Borrowers and encumbered by the Mortgages to Lender's detriment, Lender shall have the right, in its sole discretion, to advance the funds necessary to remove those encumbrances, which advance shall be an Additional Advance under the terms of this Agreement. Before making such an advance, Lender shall consult with Borrowers about the reasons why Lender has concluded that the payment of those encumbrances is appropriate. Notwithstanding that requirement, the Lender shall have the right, its sole discretion, to make the determination that such Additional Advances will be made to remove the encumbrances.

    c. It is also anticipated that Borrowers may request additional advances pursuant to this Agreement to remove the Jonesfilm encumbrances. In the event that Borrowers request that such advances be made pursuant to this Agreement, Borrowers shall submit a written request to

LOAN AGREEMENT - Page 3

Lender setting forth in detail how those advances will be used and shall provide Lender with a copy of each and every agreement with Jonesfilm or its successors and assigns regarding those encumbrances. However, Lender shall have no obligation to advance the requested funds if it determines, in Lender's sole discretion, that the requested Additional Advances should not be made.

(d) As an additional inducement to cause Lender to make this Loan to Borrowers, Borrowers agree that a portion of the Additional Advances will be used to pay attorney fees, costs and other expenses to pursue the Content Litigation currently pending in England ("**Content Litigation Expenses**"), in which Lender has a part interest. Any amounts advanced to pay for the Content Litigation Expenses shall be conditional upon the approval of Lender and shall not exceed the lesser of (i) $250,000.00 or (ii) the difference between the maximum principal loan amount of $3,166,000.00 less the total of the Initial Advance and the other advances or principal made pursuant to the terms of this Agreement.

6. SECURITY INTEREST:

a. To secure the Obligation and all other amounts that may become owed to Lender pursuant to this Agreement, Lender shall receive the Mortgages and all other loan and collateral documents assigned to Lender from Whitney Bank to secure repayment the Obligation. The property in which the Lender shall receive a security interest to secure performance of the Obligation shall be collectively referred to herein as the "**Collateral.**" The Collateral shall be released upon payment in full of all amounts of the Obligations.

b. Until the Obligation is fully and finally repaid, Borrower shall not sell, assign, convey, encumber, hypothecate or otherwise transfer or alienate any of the Collateral, nor suffer, permit or authorize any person to file or record any Mortgage, or other public record purporting to create, perfect or give notice of any right, title, claim or interest of any such person in and to any of the Collateral. This agreement by Borrowers is fundamental to Lender's agreement to extend the Loan.

c. Except as Lender may otherwise agree in writing, Borrowers warrant that Lender shall be in a first priority position on all Collateral.

7. THIRD PARTY GUARANTY: In an Event of a Default, and without waiving any other rights or remedies, Lender shall have the right to repayment of the Obligation pursuant to Guaranty, which provides in part for repayment of all amounts owed pursuant to the Loan Documents.

8. ATTORNEY FEES AND ADDITIONAL COSTS: On the Effective Date, and as a draw against the Loan, Borrowers agree that Lender will draw against the Loan the actual amount of Lender's attorney fees for the preparation of all of the Loan Documents, and all costs (including legal costs) relating to the filing any Loan Documents. Borrowers shall pay all reasonable attorney fees and costs incurred by Lender in connection with any collection efforts by Lender including, without limitation, legal fees and costs. Borrowers agree to pay all wire transfer charges including, without limitation, wire transfer charges incurred by Lender in making the Loan and wire transfer charges incurred by Borrower in repaying the Obligation. Lender shall

have no obligation, liability or responsibility to any broker, finder and/or person claiming any sort of right or interest in receiving remuneration in connection with this transaction.

9. BENEFIT OF AGREEMENT:

    a. Lender may assign or transfer all or any part of its rights and benefits under this Agreement without the consent of Borrower.

    b. Borrowers may not assign any part of its rights and benefits under this Agreement without the prior written consent of Lender, which consent shall be in the sole and absolute discretion of Lender.

10. NOTICE: All notices which either party is required or may desire to give the other under the Agreement shall be in writing and shall be given either by personal delivery, telecopy (toll prepaid) or by registered or certified mail (postage prepaid) to the appropriate party as discussed in this paragraph. All notices to Borrowers shall be made to the attention of Susan H. Hoffman, 900 Royal Street, New Orleans, Louisiana, 70616. All notices to Lender shall be made to: AMAG, Inc., 233 Wilshire Blvd., Suite 200, Santa Monica, California, 90401, Attn: Steven C. Markoff, with copies the attention of John F. Kurtz, Jr., Hawley Troxell Ennis & Hawley LLP, 877 Main Street, Suite 1000, Boise, Idaho 83702, Fax No. (208) 954-5232, or such other addresses as requested by Lender in writing.

11. APPLICABLE LAW AND SEVERABILITY: This Agreement shall in all respects be governed by and construed in accordance with the laws of Louisiana applicable to agreements executed and to be wholly performed within Louisiana. Nothing contained herein shall be construed so as to require the commission of any act contrary to law, and whenever there is any conflict between any provision contained herein and any present or future statute, law, ordinance or regulation contrary to which the parties have no legal right to contract, the latter shall prevail and the provision of this document which is affected shall be curtailed and limited only to the extent necessary to bring it within the requirements of law.

12. VENUE AND JURISDICTION: Borrowers hereby agree (i) that any litigation, action or proceeding arising out of or relating to this Agreement may only be instituted in Orleans Parish, Louisiana, (ii) that Borrowers waive all objections which it might have now or hereafter have with regard to the venue of any such tribunal, (iii) that Borrowers irrevocably and unconditionally submits to the jurisdiction and venue of any such court, and (iv) that Borrowers hereby waive any claim or defense of inconvenient forum. **THE PARTIES HEREBY WAIVE THEIR RESPECTIVE RIGHT TO TRIAL BY JURY OF ANY CAUSE OF ACTION WHATSOEVER ARISING OUT OF OR IN ANY WAY RELATED TO OR CONNECTED WITH THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT NOW OR HEREAFTER ENTERED INTO BETWEEN THE PARTIES UNDER CONTRACT, TORT OR ANY OTHER LEGAL THEORY.**

13. AUTHORIZATION: Susan H. Hoffman and Royal Alice Properties, LLC each represent and warrant that Susan H. Hoffman is the sole member of Royal Alice Properties, LLC and the authorized representative of Royal Alice Properties, LLC and that she has all requisite authority to bind Royal Alice Properties, LLC, and that Royal Alice Properties, LLC is in good

LOAN AGREEMENT - Page 5

standing in Louisiana and in any other jurisdiction in which it is required to be qualified; that Susan H. Hoffman and Royal Alice Properties, LLC each have the power and authority to own their properties and to transact the business in which it is engaged in all places at which they engage in business; that they have each taken all actions required to be taken in connection herewith; and that upon execution of this Agreement by them, this Agreement will constitute a legal, valid and binding obligation of them and will be enforceable against them as set forth herein.

14. PROTECTION OF COLLATERAL: So long as Borrowers owes Lender any amount pursuant to this Agreement, Borrowers shall not enter into any agreement relating to the Collateral without first obtaining the express written permission of Lender.

15. POWER OF ATTORNEY: Borrowers hereby irrevocably appoints Lender as their true and lawful attorney-in-fact with full and irrevocable power of attorney on behalf of Borrowers, to execute any and all documents (including the endorsement of checks), or to take any actions reasonably necessary in Lenders good-faith sole discretion to enforce any of the provisions of this Agreement or any of the other Loan Documents, including its rights to the Collateral.

16. RIGHT TO INSPECT: Borrower shall maintain complete and accurate books and records relating to the Collateral, and Lender shall have the unlimited right to inspect and copy such books and records, including access to all computer hardware or software necessary to inspect any books and records kept on computers. Lender shall also have the right to inspect any of the Collateral at any time. Upon request of Lender, Borrower shall furnish Lender with any information as Lender may request from time to time.

17. MISCELLANEOUS: This Agreement with the Loan Documents embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof; and no failure to exercise, and no delay in exercising any right, power or remedy hereunder or under any agreement referred to herein shall impair any right, power or remedy which Lender may have, nor shall any such delay be construed to be a waiver of any of such rights, powers or remedies or an acquiescence in any breach or default under this Agreement or any agreement referred to herein nor shall any waiver of any breach or default of Borrowers hereunder be deemed a waiver of any default or breach subsequently occurring. The rights and remedies herein specified are cumulative and not exclusive of any rights or remedies which Lender would otherwise have, at law or in equity.

IN WITNESS WHEREOF the parties have executed this Agreement as of the date set forth above.

**"BORROWERS"**

Royal Alice Properties, LLC           Susan H. Hoffman, an individual

By: *Susan H Hoffman*                  *Susan H Hoffman*
Name: Susan H. Hoffman
Title: Managing Member


**"LENDER"**

AMAG, INC.

By: *[signature]*
Name: ROBERT CREEK
Title: CONTROLLER

LOAN AGREEMENT - Page 7