UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. 19-12337 |
| ROYAL ALICE PROPERTIES, LLC | SECTION "A" |
| DEBTOR | CHAPTER 11 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| ROYAL ALICE PROPERTIES, LLC | |
| PLAINTIFF | **ADV NO. 19-0113** |
| VERSUS | |
| AMAG, INC. | |
| DEFENDANT | |

**DEFENDANT AMAG, INC.'S MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ............................................. 1

II.  STATEMENT OF FACTS REGARDING CLAIMS FOR USURY,
     ILLEGAL DEFAULT INTEREST AND SIMULATION ............................................. 3

     A.   Facts Relevant to Usury and Illegal Default Interest Claims............................ 3

     B.   Facts Relevant to Claim that the Stock Purchase Agreement Was a
          Simulation. ............................................................................................................. 5

III. ARGUMENTS REGARDING CLAIMS FOR USURY, ILLEGAL
     DEFAULT INTEREST AND SIMULATION ............................................................. 7

     A.   Standards for Motion for Summary Judgment................................................... 7

     B.   The Loan Agreement Is Not Usurious Pursuant to La. R.S. 9:3501.................. 8

     C.   The Loan Agreement and Secured Promissory Note Do Not Provide
          for Default Interest in Excess of the Amount Permitted by La. R.S.
          9:3509B(1)(b). ..................................................................................................... 11

     D.   The Sale of the SAE Preferred Shares to Susan Hoffman Was Not a
          Simulated Sale. .................................................................................................... 12

IV.  STATEMENT OF FACTS REGARDING FORECLOSURE OF
     QUEENS ROAD PROPERTY IN CALIFORNIA..................................................... 15

V.   ARGUMENT REGARDING SURPLUS FUNDS RECEIVED BY PALM
     FROM FORECLOSURE OF QUEENS ROAD PROPERTY ................................... 19

     A.   The Amount Received by Palm from the Foreclosure Sale Should
          Not Be Credited to the AMAG Loan................................................................. 19

VI.  CONCLUSION........................................................................................................... 22

07616.0191.13105127.4

# TABLE OF AUTHORITIES

**Cases**

*Blossman v. Olsen,*
365 So. 2d 545 (1978)................................................................................................ 14

*California First Bank v. Braden,*
216 Cal. App. 3d 672, 264 Cal. Rptr. 820 (1989)...................................................... 21

*Citizens' Bank & Tr. Co. v. Willis,*
162 So. 822 (La. 1935) .......................................................................................... 14, 15

*Coffey v. Peoples Mortg. & Loan of Shreveport,*
408 So. 2d 1153 (La. Ct. App. 1981)......................................................................... 10

*Guilbeau v. Domingues,*
149 So. 3d 825 (2014)................................................................................................ 14

*In re Placid Oil Co.,*
932 F.2d 397 (1991)..................................................................................................... 7

*Jefferson Door Co. v. Lewis,*
713 So. 2d 835 (La. Ct. App. 1998)........................................................................... 10

*Johnson v. Diversicare Afton Oaks, LLC,*
597 F.3d 673 (5th Cir. 2010) ....................................................................................... 7

*Jones v. United States,*
936 F.3d 318 (5th Cir. 2019) ....................................................................................... 7

*Matter of Zedda,*
103 F.3d 1195 (1997)............................................................................................ 13, 14

*Owen v. Owen,*
336 So. 2d 782 (La. 1976) .......................................................................................... 14

*Pine Prairie Energy Ctr., LLC v. Soileau,*
141 So. 3d 367 (La. Ct. App. 2014), *writ denied,* 152 So. 3d 177 (La. 2014)............................ 14

*Russell v. Culpepper,*
344 So. 2d 1372 (La. 1977) ........................................................................................ 14

*Spencer v. Boucher*,
519 So. 2d 1197 (La. Ct App. 1988)........................................................................ 10

*Succession of Quaglino*,
232 La. 870 (Sup. Ct. La. 1957) ............................................................................ 15

*Successions of Webre*,
247 La. 461, 172 So. 2d 285 (1965) ...................................................................... 13

**Statutes**

Cal. Code Civ. Proc. § 337 .................................................................................... 20

Cal. Code Civ. Proc. § 360 .................................................................................... 20

Cal. Code Civ. Proc. § 360.5 ................................................................................. 21

La. R.S. 9:3501 ........................................................................................... 1, 8, 12

La. R.S. 9:3509 ...................................................................................... 1, 8, 11, 12

LSA-C.C. art. 2025 ............................................................................................... 13

LSA-C.C. art. 2026 ......................................................................................... 13, 14

LSA-C.C. art. 2027 ......................................................................................... 13, 14

LSA-R.S. 9:3509 ......................................................................................... 1, 2, 10

**Other Authorities**

3 Witkin, *Actions*, Cal Proc. § 333 (3d ed. 1985)................................................. 21

43 Cal. Jur. 3d Limitations of Actions § 195 (2020) ........................................... 20

07616.0191.13105127.4

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

This Memorandum is filed in support of Defendant AMAG, Inc.'s ("AMAG") Motion for

Summary Judgment on each of the four claims for declaratory judgment asserted by Debtor and

Plaintiff, Royal Alice Properties, LLC ("Royal Alice"), in this Adversary Proceeding.

Royal Alice has alleged four claims for declaratory relief relating to the loan made by

AMAG on July 31, 2013, to Susan H. Hoffman ("Susan Hoffman") and Royal Alice.  The loan

was guaranteed by Peter Hoffman.

First, Royal Alice seeks a declaratory judgment that the loan is usurious and subject to

forfeiture pursuant to La. R.S. 9:3501 based on its allegation that the loan was not for

commercial, business or agricultural purposes.  To the contrary, the loan was made for

commercial and business purposes and is, therefore, exempt from the usury law pursuant to

LSA-R.S. 9:3509.  Paragraph 1 of the Loan Agreement expressly provides in relevant part:

> Borrowers warrant and represent that the Loan will be used
> exclusively for business and commercial purposes and is not being
> used for personal or household purposes.

There were other representations in the documents signed by Susan Hoffman that the

loan was exclusively for a commercial purpose.  Furthermore, prior to signing the Loan

Agreement, Susan Hoffman signed a Term Sheet expressly stating the loan proceeds would be

used solely for commercial purposes.

Second, Royal Alice seeks a declaratory judgment that the loan is in excess of the

maximum amount of default interest permitted by La. R.S. 9:3509B(1)(b).  To the contrary, the

Loan Agreement provides for a default rate of interest of 18% per annum.  Because the loan was

DEFENDANT AMAG, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 1

for an amount in excess of $250,000.00, the simple interest rate limit after a default is 21%
pursuant to LSA-R.S. 9:3509B.(1)(b).

Third, Royal Alice seeks a declaratory judgment that $366,250.00 of the principal
amount loaned pursuant to Loan Agreement to purchase 36,625 shares of Seven Arts
Entertainment, Inc. preferred stock was a "simulation" that precludes AMAG's right to
repayment of that amount and any interest on that amount.  The Stock Purchase Agreement
signed by Susan Hoffman contains detailed representations that she conducted her own
investigation of the investment in the preferred shares.  Furthermore, a few days before the loan
was made, Peter Hoffman sent an email to AMAG and Susan Hoffman stating that the stock
purchase would be paid by investors in Seven Arts Entertainment, Inc. ("SAE") within three
months after the loan was to be made.  The sale of the preferred stock was not a simulation.

Fourth, Royal Alice seeks a declaratory judgment that AMAG should be required to
reduce the loan balance by the amount of $392,779.75 paid to Palm Finance Corporation
("Palm") after a foreclosure on Peter Hoffman's residence in Los Angeles, California.[1]  Royal
Alice contends that the balance of the AMAG loan should be reduced by the amount received by
Palm because the statute of limitations had run on Palm's right to recover on the personal
guaranty of Peter Hoffman.  However, under California law the four-year statute of limitations
does not begin to run until the last payment on the loan has been received and several payments
had been received on the loan within four years prior to the application of payment from the

---

[1] AMAG will discuss the facts regarding this fourth claim for declaratory relief, which involves
Palm Finance Corporation, a California corporation and Licensed Finance Lender in California
and Peter Hoffman, neither of which are parties in this adversary proceedings, in a separate
section entitled "Statement of Facts – Foreclosure of Queens Road Property in California."

DEFENDANT AMAG, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 2

foreclosure.  In addition, Mr. Hoffman expressly waived the statute of limitations in his guaranty,

which is enforceable under California law.  Royal Alice's claim is meritless.

## II.    STATEMENT OF FACTS REGARDING CLAIMS FOR USURY, ILLEGAL DEFAULT INTEREST AND SIMULATION

**A.    Facts Relevant to Usury and Illegal Default Interest Claims.**

Royal Alice's first three claims directly involve the Loan Agreement between AMAG, as

"Lender," and Susan H. Hoffman, an individual, and Royal Alice, a Louisiana limited liability

company, as "Borrowers," on July 31, 2013, pursuant to which AMAG loaned the principal

amount of $3,166,000.00 ("Loan Agreement").  Declaration of Robert Frcek ("*Frcek Dec.*"), ¶ 5,

Exh. 1.  The last sentence of Paragraph 1 of the Loan Agreement expressly provides:

> Borrowers warrant and represent that the Loan will be used
> exclusively for business and commercial purposes and is not being
> used for personal or household purposes.

Paragraph 1 also provides a detailed description as to how the loan proceeds were to be

used, providing as follows:

> 1. LOAN:  Lender has acquired the outstanding balance of
> loans owed by Susan H. Hoffman and Peter Hoffman to Whitney
> Bank, the successor-in-interest to Hancock Bank of Louisiana, and
> Lender has been induced by Borrowers to (i) amend the terms of
> such existing loans and (ii) to make additional loans to Borrower
> all as described hereunder, in an aggregate amount not to exceed
> the principal amount of $3,166,000.00 (the "**Loan**") to Borrowers,
> with such additional lending to be exclusively for the following
> purposes: (i) providing funds for Susan H. Hoffman to purchase
> 36,625 shares of Series A Convertible Exchangeable Preferred
> Stock of Seven Arts Entertainment, Inc. ("**Stock Purchase**"), and
> all other costs, expenses and fees required pursuant to this
> Agreement (collectively the "**Initial Advance**").  Lender has also
> agreed to provide additional advances, subject to the conditions set
> forth in this Agreement, to allow the Borrowers to obtain the
> removal of all liens, encumbrances, notices of lis pendens,
> judgments, orders and adverse filings, if any, currently being

DEFENDANT AMAG, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 3

pursued by Jonesfilm against the property owned by Borrowers in the state of Louisiana and to provide funds to pay attorney fees, cost and other expenses to pursue certain litigation currently pending in England ("**Content Litigation**"), which additional advances are referred to in this Agreement as "**Additional Advances**". Borrowers warrant and represent that the Loan will be used exclusively for business and commercial purposes and is not being used for personal or household purposes.

As stated in described Paragraph 1, on the same date, AMAG entered into an agreement entitled "Sale and Transfer of Notes and Security Therefor Without Recourse," with Whitney Bank, as the successor-in-interest to Hancock Bank of Louisiana, pursuant to which Whitney Bank transferred all of its interests in a loan originally made to Peter Hoffman and Susan Hoffman by Hancock Bank of Louisiana evidenced by a Promissory Note dated April 3, 2007, for $2,300,000.00 and a Promissory Note dated April 26, 2012, for $649,863.19 and other agreements associated with those loans in exchange for a payment of $1,860,901.60, which was the balance owed to Whitney Bank. *Frcek Dec.* ¶ 7, Exh. 3. Both of those Promissory Notes expressly provide in relevant part:

"APPLICABLE LENDING LAW. To the extent not preempted by federal law, this business or commercial loan is being made under the terms and provisions of La. R.S. 9:3509, et. seq."

*Frcek Dec.* ¶ 7, Exh. 3 at AMAG000012 and AMAG000017.

The prior negotiations also show that the loan was being made for commercial purposes. On May 16, 2013, Susan Hoffman and Peter Hoffman signed a Memorandum to Steve Markoff and Robert Frcek of AMAG, referred to as a "Non-Binding Term Sheet." *Frcek Dec.* ¶ 12, Exh. 8. Paragraph 4. N. of that document provides:

N. Use of Loan Proceeds. Borrower represents that no loan proceeds will be used for personal purposes and warrants that 100% of the loan proceeds will be used solely for commercial

DEFENDANT AMAG, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 4

purposes as follows: Approximately $1.7M to pay off existing
bank loans with Whitney Bank (formerly Hancock Bank) for loans
secured by the properties used as security on this loan as described
in 3.A. to 3.C. above (which show mortgage balances at 12/31/12
on Susan Hoffman's personal financial statement totaling
$1,767,743), to pay lender's loan fee, legal expenses, and property
inspection expenses, to purchase $366,250 in Seven Arts Preferred
stock held by Lender, and to use the remaining loan proceeds to
settle the JonesFilm litigation judgement of $246,000 plus interest,
which is expected to settle for $250,000 to $350,000.

Representatives of AMAG were never told that the loan proceeds would be used for any

purpose other than a commercial purpose and had no reason to believe otherwise. *Markoff Dec.*

¶ 8.  There is no evidence that the loan was not a business or commercial loan exempt from the

usury laws.

**B.    Facts Relevant to Claim that the Stock Purchase Agreement Was a Simulation.**

It is undisputed that Susan Hoffman purchased 36,625 shares of Series A Convertible

Exchangeable Preferred Stock of Seven Arts Entertainment, Inc. ("SAE Preferred Shares") for

$366,250.00 pursuant to a Stock Purchase Agreement dated July 31, 2013, with proceeds from

the AMAG Loan. *Frcek Dec.* ¶ 14. Exh. 10.  In Paragraphs 5 (g), (h), (i) (j) and (k) of that

agreement, Susan Hoffman represented and warranted, as the "Buyer," as follows:

(g)     Buyer has reviewed and understands the Certificate and the
Investor Rights Agreement.  Buyer has reviewed Company's
filings with the United States Securities and Exchange
Commission and has conducted such due diligence and made such
inquiry of the Company and her representatives as she has deemed
necessary and has been furnished all materials relating to
Company, its business and financial condition, the Shares, and any
other matters which she has requested and has been afforded by the
Company the opportunity to ask questions and receive answers
concerning the Company and the Shares; and the Company has
answered all inquiries that Buyer has made of it concerning
Company, its business and financial condition, or any other matter

relating to the operation of Company and the rights, privileges, limitations and value of the Shares.

(h)     Buyer recognizes that an investment in the Shares involves significant risks.  Buyer has not received, and is not relying on, any information received from Seller relating to the Company, its business, financial condition, results of operations or other information pertinent to the valuation of the Shares.

(i)     Buyer is not relying on Seller with respect to the legal, tax, economic and related considerations of an investment in the Shares but has relied on the advice of, or has consulted with, only her own legal, tax and other advisors.

(j)     Buyer has participated in pre-existing business relationships between the Company and Seller and has such knowledge and experience in business and financial matters as to enable her to utilize the information made available to her by the Company, to protect her own interests, to evaluate the merits and risks of her investment in the Shares, and to make an informed investment decision with respect thereto.

(k)     Buyer (i) has adequate means of providing for her current needs and possible personal contingencies, (ii) has no need for liquidity in her investment in the Shares, (iii) is able to bear the economic risks of her investment in the Shares, and (iv) at the present time, can afford a complete loss of such investment.

*Frcek Dec.* ¶ 14, Exh. 10.

During the period from July 26 through July 28, 2013, emails were exchanged between Susan Hoffman, Peter Hoffman and representatives of AMAG concerning the loan and the acquisition of the SAE Preferred Shares.  In those emails, Steven Markoff indicated that the shares could be almost worthless.  However, both Peter Hoffman and Susan Hoffman expressed that Susan would be able to sell those shares for an amount that would allow her to repay the portion of the loan used to fund the purchase of the SAE Preferred Shares within the three

DEFENDANT AMAG, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 6

months.  *Frcek Dec.* ¶¶ 15 & 16, Exhs. 11 & 12.  Declaration of Steven C. Markoff ("*Markoff Dec.*"), ¶¶ 15 & 16, Exhs. 7 & 8.

### III.     ARGUMENTS REGARDING CLAIMS FOR USURY, ILLEGAL DEFAULT INTEREST AND SIMULATION

**A.     Standards for Motion for Summary Judgment.**

Summary judgment is proper if "there is no genuine dispute as to any material fact and that the movant is entitled to summary judgment as a matter of law.  *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019).  A party seeking summary judgment always bears the initial responsibility of demonstrating the absence of a genuine issue of material fact.  Once the moving party does so, the nonmoving party must "go beyond the pleadings and designate specific facts showing there is a genuine issue for trial."  An issue is "genuine" if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party.  A non-movant will not avoid summary judgment by presenting speculation, improbable inferences, or unsubstantiated assertions.  Rule 56 mandates entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *E.g., Jones v. United States*, 936 F.3d at 321.

In bench-trial cases the trial court has greater discretion to grant summary judgment.  The judge may "decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result.  *Jones*, 936 F.3d at 321-22; *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 676 (5th Cir. 2010); *In re Placid Oil Co.,* 932 F.2d 397, 398 (1991).

DEFENDANT AMAG, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 7

B.       **The Loan Agreement Is Not Usurious Pursuant to La. R.S. 9:3501.**

Royal Alice's claim that the Loan Agreement provided for usurious interest in violation of La. R.S. 9:3501 is meritless.  La. R.S. 9:3509 expressly provides an exception to the maximum interest rate of interest for loans made for business of commercial purposes.  That section provides in relevant part as follows:

> A.  Notwithstanding any other provisions of the law of this state to the contrary, any debtor that is a . . . limited liability company formed pursuant to the laws of this or any other state, . . . or any other person or individual borrowing funds for commercial, business, or agricultural purposes or deferring payment of an obligation for commercial, business, or agricultural purposes, may agree to pay interest in excess of the maximum rate of conventional interest authorized by the laws of this state, whether in connection with unsecured or secured indebtedness and whether the secured indebtedness is secured, in whole or in part, directly or indirectly, by a real estate mortgage or chattel mortgage on property in this state or is otherwise secured, and as to any such agreement such debtor shall be prohibited from asserting a claim or defense of usury or of the taking of interest in excess of the maximum rate of conventional interest, and any person whatsoever signing as co-maker, . . . for such debtor shall also be prohibited from asserting any such claim or defense.

As discussed above, the Loan Agreement entered into between AMAG, Inc. (as "Lender"), and Susan H. Hoffman and Royal Alice Properties, LLC (as "Borrowers") expressly provides in Paragraph 1:

> Borrowers warrant and represent that the Loan will be used exclusively for business and commercial purposes and is not being used for personal or household purposes.

Also, as discussed above, the Loan Agreement signed on July 31, 2013, and the Memorandum signed by Peter Hoffman and Susan Hoffman dated May 16, 2013, both expressly identified the purposes for which the loan was to be used: (1) $1.7 million for repayment of the

DEFENDANT AMAG, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 8

Whitney Bank loans that were being transferred to AMAG, (2) $366,250.00 for the purchase of the SAE Preferred Stock, (3) loan and legal fees for the loan, and (3) amounts expected to be used to settle a JonesFilm litigation judgment; and then expressly represented those were exclusively commercial purposes.

The promissory notes for loans transferred by Whitney Bank to AMAG expressly state:

> "APPLICABLE LENDING LAW. To the extent not preempted by federal law, this business or commercial loan is being made under the terms and provisions of La. R.S. 9:3509, et. seq."

Representations that the loan was for commercial purposes were also made by Peter Hoffman and Susan Hoffman in other correspondence.  Steven C. Markoff sent an email to Peter Hoffman on May 9, 2013, stating in relevant part:  "100% of the loan proceeds must be used for commercial [not personal] purposes."  In response to that email, Peter Hoffman sent an email on May 10, 2013, to Mr. Markoff, with a copy to Susan Hoffman, stating in relevant part:  "The proceeds are being used to repay the existing mortgage, costs of this loan and a reserve for Jonesfilm.  I believe these are commercial purposes within your intent."  *Frcek Dec.* ¶ 11, Exh. 7.

Finally, there is no evidence that the loan proceeds were ever used for anything other than commercial purposes and AMAG representatives were never told that the loan was being made for anything other than commercial purposes.  *Markoff Dec.* ¶ 8.

Not surprisingly, AMAG has been unable to find a Louisiana published opinion where a borrower, who had unequivocally represented a loan would be used exclusively for commercial purposes, claimed that the court should conclude the loan was not for commercial purposes.

DEFENDANT AMAG, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 9

Indeed, such a loan would almost certainly be found to have been fraudulently obtained by the borrower.

In *Spencer v. Boucher*, 519 So. 2d 1197 (La. Ct App. 1988), a debtor brought an action against the lender alleging the promissory note, which provided for interest at 16% called for the payment of usurious interest. The debtor had told the lender that she wanted to borrow $26,000.00 of which $16,888.75 was to be used to pay off an existing mortgage on her house and to stock a convenience store to be operated by her son and her.

The trial court found that the interest rate was 16% but that the loan was a business or commercial loan and did not violate usury laws. The Court of Appeals held that the loan was exempt from the usury law pursuant to LSA-R.S. 9:3509 as a loan made for business or commercial purposes. The Court of Appeals also addressed an alternative argument made by the debtor that "the loan instrument itself must specify that it is for business or commercial purposes in order to claim the benefit of an exception to usury," relying on *Coffey v. Peoples Mortgage & Loan of Shreveport*, 408 So. 2d 1153 (La. Ct. App. 1981). The *Spencer* Court of Appeals concluded that *Coffey* had no application in and that it "was not necessary to express an intent in writing in order to trigger the business and commercial purpose exception" to the usury law.

In *Jefferson Door Co. v. Lewis*, 713 So. 2d 835, 838 (La. Ct. App. 1998), the court stated that in *Spencer v. Boucher*, the "Court held that the transaction was commercial noting that the deciding factor was the debtor's objective representations." *Id.* at 838. The *Jefferson* court then concluded that the loan in that case was for commercial purposes and not usurious because "there were no objective representations that the items being purchased were for personal use.

DEFENDANT AMAG, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 10

The credit application does not evidence the fact that defendant was purchasing the merchandise for personal use." *Id.*

Summary judgment should be granted in favor of AMAG on Royal Alice's claim for a declaratory judgment that AMAG charged usurious interest.

**C.      The Loan Agreement and Secured Promissory Note Do Not Provide for Default Interest in Excess of the Amount Permitted by La. R.S. 9:3509B(1)(b).**

Royal Alice's claim that the default rate of interest charged by AMAG violates La. R.S. 9:3509B is meritless.  Paragraph 3 of the Secured Promissory Note expressly provides: "Upon default, the interest rate provided for in this Note shall immediately increase to eighteen percent (18%) per annum ('Default Rate'), unless and until cured by Maker . . . ." *Frcek Dec.* ¶ 32, Exh. 28.

Thus, the Loan Agreement and the Secured Promissory Note do not provide for default interest in excess of the amount permitted by La. R.S. 9:3509B, which provides in relevant part as follows:

> B. (1) Notwithstanding the provisions of Subsection A of this Section, and unless otherwise agreed in writing after the default, a lender may not prospectively increase the simple interest rate under a commercial, business, or agricultural purpose loan following declaration of the obligor's default except as follows:
>
> . . .
>
> (b) With respect to obligations having an original principal balance in excess of two hundred fifty thousand dollars, the fixed simple interest rate shall not be prospectively increased to a rate greater than twenty-one percent per annum or three percentage points over the original, fixed contract rate in effect prior to default, whichever is greater.
>
> . . .

> (3) The exclusive remedy that may be asserted against a lender or
> other obligee for a violation of this Subsection is the return of any
> excessive post-default interest that may have been assessed and
> collected. Specifically, the obligor shall have no rights under
> R.S. 9:3501.

The amount loaned pursuant to the Loan Agreement was $3,166,000.00, clearly exceeding the $250,000.00 threshold for the 21% default rate authorized by 9:3509B(1)(b). Thus, the 18% default rate charged by AMAG is clearly allowed by statute.

It is also noteworthy that even if it could be shown that the default rate exceeded 21%, the exclusive remedy provided in 9:3509B(3) is the return of any excessive post-default interest that may have been assessed and collected and the obligor has no rights pursuant to La. R.S. 9:3501.

Summary judgment should be granted in favor of AMAG on Royal Alice's claim for a declaratory judgment that AMAG charged illegal default interest.

**D.     The Sale of the SAE Preferred Shares to Susan Hoffman Was Not a Simulated Sale.**

Royal Alice has alleged that the Stock Purchase Agreement was a simulation under Louisiana law based on Royal Alice's allegations that the shares being purchased were worthless at that time.[2]

There is no dispute that the Loan Agreement provided that $366,250.00 of the principal amount loaned would be used to purchase the SAE Preferred Shares.  However, that sale was not

---

[2] Royal Alice alleges in Paragraphs 14, 18, 21 and 22 that the SAE Preferred Shares were worthless at the time of the sale resulting in a simulated sale. Royal also includes vague allegations about the sale of "Conversion Stock," without any explanation on how transactions involving "Conversion Stock," would make the Stock Purchase Agreement a "simulation."  The allegations regarding "Conversion Stock" have no relevance to the issue of whether the Stock Purchase Agreement should be a "simulation."

DEFENDANT AMAG, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 12

a "simulation."  As set forth in more detail above, the Stock Purchase Agreement signed by

Susan Hoffman contains express representations by Susan Hoffman that she had conducted her

own investigation of the investment in the preferred shares and that she had such knowledge and

experience in business and financial matters to enable her to utilize the information made

available to her by Seven Arts Entertainment, Inc., to protect her own interests to evaluate the

merits and risks of her investment in the shares and to make an informed investment decision.

*Frcek Dec.* ¶ 14, Exh. 10.

Furthermore, on July 26, 2013, five days before Susan Hoffman signed the Stock

Purchase Agreement, emails were exchanged between AMAG, Susan Hoffman and Peter

Hoffman regarding the ability of the borrowers to repay the loan.  *Frcek Dec.* ¶ 15, Exh. 11.  In

one of the those emails, Peter Hoffman addressed Susan Hoffman's ability to repay the loan by

indicating that she would be able to sell the preferred stock to be  purchased by selling those

shares to other investors of SAE stock, stating:

> The Seven Arts stock purchase will be funded by Seven Arts
> Investors within the next three months including interest.

*Frcek Dec.* ¶ 15, Exh. 11 at 1.

Under Louisiana law a simulated transaction is nothing more than a sham and as such

there can be no transfer of ownership or property.  LSA-C.C. art. 2025; *Matter of Zedda,* 103

F.3d 1195 (1997).  "A contract is a simulation when, by mutual agreement, it does not express

the true intent of the parties."  LSA-C.C. art. 2025.  A simulation can be absolute or relative and

constitute an absolute nullity.  LSA-C.C. arts. 2026, 2027; *Successions of Webre,* 247 La. 461,

472, 172 So. 2d 285, 288 (1965).

DEFENDANT AMAG, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 13

An absolute or pure simulation is one in which the parties intend their contract to produce no effects between them and the transfer is nothing more than a sham. LSA-C.C. art. 2026; *Matter of Zedda,* 103 F.3d 1195 (1997). If any consideration is given for the transfer, no matter how inadequate it be, then the sale is not a simulation. *Citizens' Bank & Tr. Co. v. Willis*, 162 So. 822 (La. 1935) (where the parties to a sale agreed the fair market value to be $3,000, the sale was not a simulation regardless of whether the property was worth double that amount); *Guilbeau v. Domingues*, 149 So. 3d 825 (2014) (a transfer of stock for the admitted purpose of making it unavailable to creditors was not a simulation as there was sufficient consideration given); *Pine Prairie Energy Ctr., LLC v. Soileau*, 141 So. 3d 367 (La. Ct. App. 2014), *writ denied*, 152 So. 3d 177 (La. 2014) (a sale of a natural gas storage facility in which the contract included options to purchase and lease back was not a simulation as tax payments made on the property constituted sufficient consideration). When the parties appear to transfer property from one to the other, but retains ownership, the transaction is nothing more than a simulation. *Russell v. Culpepper*, 344 So. 2d 1372 (La. 1977).

Alternatively, a relative or disguised simulation results where the parties intend that their contract shall produce effects between them though different from those recited in their contract. LSA-C.C. art. 2027. When the parties intend the transfer to be a gift or donation rather than a sale, no matter how the transaction appears on its face, a relative simulation has occurred. *Owen v. Owen*, 336 So. 2d 782 (La. 1976); *Blossman v. Olsen*, 365 So. 2d 545 (1978) (a transfer of property without a cash payment by a deceased prior to her death to induce the transferee to live with the decedent was a disguised simulation).

The transfer of the SAE Preferred Shares by AMAG to Susan Hoffman was not a simulation.  AMAG did transfer the 36,625 SAE Preferred Shares in accordance with the terms of the Stock Purchase Agreement.  Susan Hoffman represented in the Stock Purchase Agreement that she would be responsible for determining the value of the stock that she purchased from AMAG.  Furthermore, Peter Hoffman sent an email on to Susan Hoffman and AMAG on July 26, 2013, representing that the amount being loaned to purchase the SAE Preferred Shares would be paid within the following three months by persons investing in SAE.  *Frcek Dec.* ¶ 15, Exh. 11; *Markoff Dec.* ¶ 15, Exh. 7.

On July 28, 2013, Mr. Markoff sent an email to Susan Hoffman and Peter Hoffman describing some of the risks of the loan, including that the shares being purchased could be "almost worthless."  Susan Hoffman responded that she would go through with the purchase stating: "About the $366,000 of securities buy-back.  Seth and Neil are committed to buying/selling these securities."  *Markoff Dec.* ¶ 16, Exh. 8.

It is well-settled jurisprudence in Louisiana that when the actual consideration, no matter how inadequate, has been paid by the purchaser, the transaction is not a simulated sale.  *E.g.*, *Citizens' Bank & Tr. Co. v. Willis*, 162 So. 822 (La. 1935); *Succession of Quaglino*, 232 La. 870, 886 (Sup. Ct. La. 1957).

Summary judgment should be granted in favor of AMAG on Royal Alice's claim for a declaratory judgment that the Stock Purchase Agreement was a simulation.

## IV.    STATEMENT OF FACTS REGARDING FORECLOSURE OF QUEENS ROAD PROPERTY IN CALIFORNIA

Palm made a loan to Cinevisions, Seven Arts Pictures, Inc. and Seven Arts Pictures Limited on March 31, 2003, in the principal amount of $1,500,000.00 ("Movie Loan No. 1") and

DEFENDANT AMAG, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 15

a loan to Cinevisions, Seven Arts Pictures, Inc., Seven Arts Pictures Limited and Asylum Productions Limited on July 18, 2003, in the principal amount of $1,200,000.00 ("Movie Loan No. 2"). *Frcrk Dec.* ¶¶ 21 & 23, Exhs. 17 & 19.

On or about November 19, 2003, Peter Hoffman and Susan Hoffman granted a Deed of Trust ("DOT") encumbering real property located at 1643 Queens Road, Los Angeles, California, which was recorded in Los Angeles County on December 10, 2003, as Instrument No. 03-3736332. *Frcek Dec.* ¶ 26, Exh. 22.  The DOT originally secured a Continuing Personal Guaranty of Movie Loan No. 1 and Movie Loan No. 2 from Peter Hoffman and Susan Hoffman.

On February 15, 2006, Palm entered into an Assignment of Loan Documents agreement with Arrowhead Target Fund, Ltd. to transfer a portion of the balances owed for Movie Loan No. 1 and Movie Loan No. 2 in addition to many of the loan documents associated with those loans. *Frcek Dec.* ¶ 29, Exh. 25.  However, the Queens Road DOT was not included in the transfer.  To the contrary, Peter Hoffman and Susan Hoffman signed a Secured Promissory Note payable to AMAG on February 15, 2006, for the amount of $601,347.60, which expressly identified the Queens Road DOT as security for that promissory note.  *Frcek Dec.* ¶ 30, Exh. 26, Section 8.[3]

On May 7, 2007, Palm loaned the principal amount of $5,500,000.00 to New Moon Pictures, LLC, Pool Boy the Movie, LLC ("Autopsy Loan") and on January 8, 2009, Peter

---

[3] The Court will likely recall the representations made by Peter Hoffman at the most recent hearing that the Queens Road DOT had been assigned to Arrowhead and that he had purchased the Queens Road DOT from Arrowhead.  Exhibits 25 and 26 to the Declaration of Robert Frcek clearly show that Mr. Hoffman's representations were false.

DEFENDANT AMAG, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 16

Hoffman signed a Continuing Personal Guaranty pursuant to which he agreed to guaranty the

Autopsy Loan. *Frcek Dec.* ¶ 31, Exh. 27; *Frcek Dec.* ¶ 32, Exh. 28.

On November 24, 2010, Palm, the borrowers of the Autopsy Loan and Peter Hoffman

entered into Forbearance and Workout Agreement #5. *Frcek Dec.* ¶ 33, Exh. 29. Section 2 z) of

that agreement expressly provided that one of the "Conditions to Forbearance" was as follows:

> The Deed of Trust, recorded in Los Angeles County, California on
> December 18, 2003 as Instrument No. 03 3736332, encumbering
> the real property located at 1643 Queens Road, Los Angeles,
> California ("Queens Road Property") shall remain in full force and
> effect and shall be security for the Hoffman Guaranty and all other
> guaranties from Hoffman regarding amounts owed to Lender
> ("Hoffman Guaranties"). In the event, that Deed of Trust has been
> reconveyed or otherwise is no longer an encumbrance against the
> Queens Road Property, Hoffman agrees to execute another Deed of
> Trust on Queens Road Property to secure payment of the Hoffman
> Guaranties in a form of Deed of Trust acceptable to Lender and to
> make any modifications or amendments to the Deed of Trust
> reasonably requested by Lender to perfect the Deed of Trust in
> favor of Lender.

On October 28, 2011, Palm, the borrowers of the Autopsy Loan and Peter Hoffman

entered into Forbearance and Workout Agreement #6. *Frcek Dec.* ¶ 34, Exh. 30. Section 3 x) of

that agreement expressly provided that one of the "Conditions to Forbearance" was as follows:

> The Deed of Trust, recorded in Los Angeles County, California on
> December 18, 2003 as Instrument No. 03 3736332, encumbering
> the real property located at 1643 Queens Road, Los Angeles,
> California ("Queens Road Property") shall remain in full force and
> effect and shall be security for the Hoffman Guaranty and all other
> guaranties from Hoffman regarding amounts owed to Lender
> ("Hoffman Guaranties"). In the event, that Deed of Trust has been
> reconveyed or otherwise is no longer an encumbrance against the
> Queens Road Property, Hoffman agrees to execute another Deed of
> Trust on Queens Road Property to secure payment of the Hoffman
> Guaranties in a form of Deed of Trust acceptable to Lender and to
> make any modifications or amendments to the Deed of Trust

DEFENDANT AMAG, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 17

reasonably requested by Lender to perfect the Deed of Trust in
favor of Lender.

On or about August 1, 2016, Peter Miles Hoffman and Susan Lee Hoffman executed a

second Deed of Trust encumbering the Queens Road Property ("Second DOT"). *Frcek Dec.*

¶ 35, Exh. 31.  The Second DOT was recorded on August 12, 2016, in Los Angeles County,

California as Instrument No. 20160960925.

On or about October 21, 2016, Trustee Corps conducted a foreclosure sale of a senior

Deed of Trust in favor of Chase Bank encumbering the Queens Road Property.  The amount of

the sales price paid at the foreclosure sale exceeded the balance of the amount owed to Chase

Bank.  As a result there were surplus funds.

On January 6, 2017, Peter Hoffman sent an email to Steven Markoff stating as follows:

> I am told that the trustee is making distributions of the $392,000
> surplus and the trustee has no record of the Palm claim.  If this is
> not taken care of the $392,000 will be lost to other creditors.

*Markoff Dec.* ¶ 17, Exh. 9

During the period from January through May 2017, Palm communicated with Trustee in

an effort to obtain the surplus funds.  *Frcek Dec.* ¶ 39, Exh. 34.  On June 1, 2017, Palm received

the surplus proceeds from Trustee Corps in the amount of $392,779.74 and sent an email to Peter

Hoffman advising that Palm had applied that amount against the Autopsy Loan.  For the first

time, Peter Hoffman suggested that amount should have been applied to the Susan's loan.  *Frcek*

*Dec.* ¶ 40, Exh. 35; *Markoff Dec.* ¶ 17, Exh. 9.

Palm never agreed that monies received from the DOT on the Queens Road Property

could be used for a payment against a loan made by AMAG.  *Markoff Dec.* ¶ 18.

DEFENDANT AMAG, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 18

## V.     ARGUMENT REGARDING SURPLUS FUNDS RECEIVED BY PALM FROM FORECLOSURE OF QUEENS ROAD PROPERTY

**A.     The Amount Received by Palm from the Foreclosure Sale Should Not Be Credited to the AMAG Loan.**

In Royal Alice's fourth claim for declaratory relief, Royal Alice seeks a declaratory

judgment that AMAG should be required to reduce the balance of the loan made by AMAG by

the amount of $392,779.75 because Palm received that amount after the foreclosure sale.  In

paragraphs 26 and 27 of its Adversary Complaint, Royal Alice essentially alleges that the statute

of limitations had run on the claim against Peter Hoffman on his guaranty of the Autopsy Loan

as of June 1, 2017, and, therefore, Peter Hoffman has the right to direct the amount received by

Palm to be applied against the AMAG Loan.

The allegations that Palm's claim against Peter Hoffman was barred by the statute of

limitations is meritless.  Palm had a valid and enforceable claim against Peter Hoffman as of

June 1, 2017, based on the Continuing Guaranty signed by Peter Hoffman on January 8, 2009

pursuant to which he personally guaranteed the Autopsy Loan.

As discussed above, both Workout Agreement #5 and Workout Agreement #6 expressly

provided in relevant part as follows:

The Deed of Trust, recorded in Los Angeles County, California on December 18, 2003 as

Instrument No. 03 3736332, encumbering the real property located at 1643 Queens Road, Los

Angeles, California ("Queens Road Property") shall remain in full force and effect and shall be

security for the Hoffman Guaranty and all other guaranties from Hoffman regarding amounts

owed to Lender ("Hoffman Guaranties").

DEFENDANT AMAG, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 19

Palm maintained a Loan Schedule for the Autopsy Loan which showed that immediately prior to the application of the surplus proceeds of $392,779.75, the outstanding balance owed to Palm on the Autopsy Loan was $13,151,218.26.  The Autopsy Loan Schedule also shows that during the four-year period prior to June 1, 2017, Palm received more than $2.0 million in payments that were applied against the Autopsy Loan.  *Frcek Dec.* ¶ 37, Exh. 32.  In January 2014, Palm received two wires totaling $654,905 of which the amount of $436,695 was applied to the payment of the Autopsy Loan with Peter Hoffman's knowledge and without objection. *Frcek Dec.* ¶ 38, Exh. 33.

The Autopsy Loan Agreement and the Continuing Guaranty signed by Peter Hoffman both provide for the application of California law.  California Code of Civil Procedure § 337 specifies that the statute of limitations for the breach of a written contract is four years.  California Code of Civil Procedure § 360 specifically provides that the receipt of a payment on a promissory note extends the commencement of the running of the statute of limitations from the date of that payment.  Section 360 provides in relevant part:

> [A]ny payment on account of principal or interest due on a promissory note" . . . shall be deemed a sufficient acknowledgment or promise of a continuing contract to stop, from time to time as any such payment is made, the running of the time within which an action may be commenced upon the principal sum or upon any installment of principal or interest due on that note . . . ."

Thus, pursuant to the plain language of Section 360, each payment received during the four-year period prior to June 1, 2017 extended the four-year statute of limitations.  43 CAL. JUR. 3D LIMITATIONS OF ACTIONS § 195 (2020).  As shown in the Loan Schedule, the last payment before the June 1, 2017 payment was made on March 26, 2014.  The claim against Peter Hoffman based on the Continuing Guaranty was not barred for that reason alone.

DEFENDANT AMAG, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 20

Moreover, the Continuing Personal Guaranty contains the following provision in
Section 3:

> Guarantor waives to the fullest extent, permitted by law, the
> benefit of any statute of limitations affecting his liability hereunder
> or the enforcement thereof.  Any payment by Borrowers, or other
> circumstances which operates to toll any statute of limitations as to
> Borrowers, shall operate to toll the statute of limitations as to
> Guarantor.

That waiver of the statute of limitations provision is enforceable in accordance with
California Code of Civil Procedure § 360.5 and results in an extension of the statute of
limitations to commence an action against Peter Hoffman an additional four years after the
statute of limitations would have run  against the borrowers of the Autopsy Loan.  *California
First Bank v. Braden*, 216 Cal. App. 3d 672, 264 Cal. Rptr. 820 (1989).  Section 360.5 permits a
provision extending the period (four years for written contract) by an additional four years.
3 Witkin, *Actions*, CAL PROC. § 333 (3d ed. 1985) at 364.[4]

If Palm's claim against Peter Hoffman on his Continuing Guaranty of the Autopsy Loan
was not barred by the statute of limitations, which it clearly was not, Peter Hoffman has no basis
for now claiming that the amount received by Palm and applied against the Autopsy Loan should
reapplied as "Foreclosure Credit" against the loan made by AMAG to Susan Hoffman and Royal
Alice.

---

[4] Although not necessary in this case, California Code of Civil Procedure § 351 tolls the statute
of limitations for each day a defendant is absent from the state of California, which would almost
certainly provide a third basis for concluding that the claim against Peter Hoffman is not barred
by the statute of limitations.  AMAG reserves the right to present evidence on this issue, if
necessary.

DEFENDANT AMAG, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 21

Summary judgment should be granted in favor of AMAG on Royal Alice's claim for a

declaratory judgment that amounts received by Palm from the foreclosure of the Queens Road

Property should have been applied as a "Foreclosure Credit" against the AMAG Loan.

## VI.    CONCLUSION

For the reasons discussed above, this Court should grant summary judgment in favor of

AMAG on each of Royal Alice's four claims for declaratory judgment.

DATED THIS 26th day of August, 2020.


Respectfully Submitted,



/s/ John F. Kurtz, Jr.
**John F. Kurtz, Jr. (Admitted *Pro Hac Vice*)**
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 Main Street, Suite 1000
P.O. Box 1617
Boise, ID 83701-1617
Telephone:  208.344.6000
Facsimile:  208.954.5232
Email: jkurtz@hawleytroxell.com
Attorney for AMAG, Inc.


DEFENDANT AMAG, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 22