UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | * | CASE NO.: 19-12337 |
| | * | |
| ROYAL ALICE PROPERTIES LLC | * | SECTION "A" |
| | * | |
| Debtor | * | CHAPTER 11 |
| | * | |
| ************************************ | | |
| | * | |
| ROYAL ALICE PROPERTIES LLC | * | |
| | * | |
| Plaintiff | * | ADV. NO.: 19-01133 |
| v. | * | |
| | * | |
| AMAG, INC. | * | |
| | * | |
| Defendant | * | |
| ********************************************* | | |

**<u>DECLARATION OF SUSAN L. HOFFMAN IN SUPPORT OF DEBTOR ROYAL ALICE PROPERTIES LLC's MOTION FOR SUMMARY ADJUDICATION</u>**

I, SUSAN L. HOFFMAN, declare as follows:

1. I am the sole member of Debtor Royal Alice Properties LLC ("Debtor"). I file this Declaration in support of Debtor's Motion For Summary Adjudication. I have personal knowledge of the matters set forth herein and can testify competently to each if called as a witness.

2. I entered into a Promissory Note and Loan Agreement with AMAG, Inc. ("AMAG") dated July 31, 2013 ("AMAG Loan"), a true, correct and authentic copy being attached hereto as Exhibit 1. I entered into the AMAG Loan to refinance the first mortgage on my residence located at 900-12 Royal St. in New Orleans ("900-12 Royal") because the then holder of the then existing first mortgage on 900-12 Royal, Whitney Bank ("Whitney") as successor to Hancock Bank, was threatening to foreclose on the first mortgage on 900-12 Royal. A true, correct and authentic copy of the Whitney loan is attached hereto as Exhibit 2. Pursuant to the AMAG Loan,

1

Whitney assigned the Whitney loan to AMAG, a true, correct and authentic copy of such assignment being attached hereto as Exhibit 3.

3. As a condition to making the AMAG Loan, AMAG insisted that I acquire from Palm Finance Inc. ("Palm"), an affiliate of AMAG, 36,250 shares of worthless preferred stock ("SAE Preferred Stock") of Seven Arts Entertainment Inc. ("SAE") for the sum of $366,250. AMAG increased the loan amount by $366,250 and purported to advance that sum to its affiliate Palm. A true, correct and authentic copy of the purported Stock Purchase Agreement dated July 31, 2012 is attached hereto as Exhibit 4.

4. The SAE Preferred Stock was worthless when I was forced to acquire it.

5. Steven Markoff, who controls both Palm and AMAG, warned me in an email dated July 28, 2012 that the SAE Preferred Stock was "now about worthless," a true correct and authentic copy of such email being attached hereto as Exhibit 5.

6. I did not receive a stock certificate in my name from SAE reflecting ownership of the SAE Preferred Stock.

7. I had no interest in acquiring the SAE Preferred Stock except as a means to avoid foreclosure by Whitney and to arrange the AMAG Loan. Peter Hoffman and I experienced financial difficulties due to unfair criminal charges threatened against us. Mr. Hoffman's business had ceased operation and was of no value to either of us.

8. I considered the acquisition of the SAE Preferred Stock as additional interest due under the AMAG Loan.

9. The most recent loan statement I received from AMAG shows a loan balance of $5,237,998.32, a true, correct, and authentic copy being attached hereto as Exhibit 6. That loan

balance includes the amounts I was forced to pay for the SAE Preferred Stock and interest on that amount and the other advances at 18% per annum.

10. I sought the AMAG Loan to avoid Whitney foreclosing on my residence at 900-12 Royal and to pay off a cloud on my title to 900-12 Royal created by a false *lis pendens* filed by Jonesfilm. That *lis pendens* did not arise from any business conducted by me, as confirmed in the Term Sheet dated May 16, 2016 ("Term Sheet") and an email from Mr. Hoffman to AMAG dated May 25, 2013, true, correct and authentic copies being attached hereto an Exhibit 7.

11. I did not intend to apply and did not apply any of the proceeds of the AMAG Loan to any active trade or business conducted by me including my restaurant business or any active business in the sale or rental of real estate. All proceeds of the AMAG Loan were necessary to relieve my residence at 900-12 Royal from the threat of foreclosure and to remove a cloud on title not arising from any business conducted by me.

12. The Whitney loan and the AMAG Loan are secured by mortgages on certain condominium units owned by Debtor located at 906 Royal St. and 910-12 Royal St. in New Orleans ("Condo Units"). At the time of making of the AMAG Loan, Units B and H of 910 Royal and Units D and E of 906 Royal were part of my residence and used by personal friends. As shown on the Term Sheet attached as Exhibit 7, the value of the Condo Units leased to third parties for commercial income and not used by me or my friends was less than 50% of the aggregate value of my home and the Condo Units.

13. In my opinion the value of my residence at 900-12 Royal was in truth and in fact substantially greater than the value of the Condo Units leased for rental income (Units A and C of 910-12 Royal) both to me and on any ultimate sale, as confirmed by the current value of my

3

residence. A true, correct and authentic copy of the most current appraisal of my home and the Condo Units is attached hereto as Exhibit 8.

14. I executed the AMAG Loan and earlier term sheets that included conclusory representations that the AMAG was entered into for business or commercial purposes. I believed that language was legal boilerplate and paid no attention to it. I reviewed the provisions in the AMAG Loan regarding the application of its proceeds to acquisition of the Whitney mortgages, the removal of the Jonesfilm cloud on my titled and the purchase of the worthless SAE Preferred Stock. My purpose in making the AMAG Loan was solely to achieve those objectives and I did not then and do not know believe that these are business or commercial purposes.

I hereby declare under penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct. Signed at New Orleans, Louisiana on August 28, 2020.

*/s/ Susan L. Hoffman*

_____
Susan L. Hoffman

4