UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. 19-12337 |
| ROYAL ALICE PROPERTIES, LLC | SECTION "A" |
| DEBTOR | CHAPTER 11 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| ROYAL ALICE PROPERTIES, LLC | |
| PLAINTIFF | **ADV NO. 19-01133** |
| VERSUS | |
| AMAG, INC. | |
| DEFENDANT | |

**DEFENDANT AMAG, INC.'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTION FOR SUMMARY ADJUDICATION**

# TABLE OF CONTENTS

Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................... 1

II. ARGUMENT ...................................................................................................................... 4

     A.     The Amount Received by Palm from the Foreclosure Sale Should Not Be Credited to the AMAG Loan. ..................................................................................4

     B.     The Sale of the SAE Preferred Shares to Susan Hoffman Was Not a Simulated Sale.......................................................................................................................10

     C.     The Loan Agreement Is Not Usurious Pursuant to La. R.S. 9:3501......................16

III. CONCLUSION ................................................................................................................. 21

07616.0191.13130038.2

# TABLE OF AUTHORITIES

Page

**Cases**

*Citizens' Bank & Tr. Co. v. Willis*,
162 So. 822 (La. 1935) ............................................................................................ 16

*Coffey v. Peoples Mortg. & Loan of Shreveport*,
408 So. 2d 1153 (La. Ct. App. 1981)...................................................................... 20

*First Nat'l Bank v. Campo*,
537 So. 2d 268 (La. Ct. App. 4th Cir. 1988),
*writ denied*, 538 So. 2d 578 (La. 1989) ................................................................ 19

*Gulf States Fin. Corp. v. Airline Auto Sales, Inc.*,
181 So. 2d 36 (La. 1965) ........................................................................................ 18

*Jefferson Door Co. v. Lewis*,
713 So. 2d 835 (La. Ct. App. 1998)........................................................................ 20

*Johnson v. Orkin Exterminating Co.*,
746 F. Supp. 627 (E.D. La. 1990)........................................................................... 18

*Kirsch v. Pier Orleans, Inc.*,
363 So. 2d 1182 (La. Ct. App. 4th Cir. 1978).......................................................... 18

*Land & Offshore Co. v. Martin*,
469 So. 2d 1177 (La. Ct. App. 3d Cir. 1985),
*writ denied*, 524 So. 2d 748 (La. 1988) ................................................................ 19

*Mississippi Land Co. v. S & A Props. II, Inc.*,
817 So. 2d 1200 (2002)............................................................................................. 7

*Placid Ref. Co. v. Privette*,
523 So. 2d 865 (La. Ct. App. 1st Cir. 1988)........................................................... 19

*Spencer v. Boucher*,
519 So. 2d 1197 (La. Ct App. 1988)....................................................................... 19

*Succession of Quaglino*,
232 La. 870 (Sup. Ct. La. 1957) ............................................................................. 16

*United States v. Hoffman*,
901 F.3d 523 (5th Cir. 2018) ................................................................................... 4

07616.0191.13130038.2

**Statutes**

LA. CIV. CODE art.  1864 ........................................................................................................... 8

LA. CIV. CODE art. 1848 ........................................................................................................... 18

LA. CIV. CODE art. 1868 ........................................................................................................... 8

La. R.S. 9:3501 ........................................................................................................................ 2

La. R.S. 9:3509 ................................................................................................................... 2, 18

LSA-R.S. 9:3509 ................................................................................................................. 2, 20

07616.0191.13130038.2

# I.
## INTRODUCTION AND SUMMARY OF ARGUMENT

This Memorandum is filed by Defendant AMAG, Inc. ("AMAG") in opposition to

Debtor and Plaintiff, Royal Alice Properties, LLC's ("Royal Alice") Motion for Summary

Adjudication ("Debtor's Motion") and more specifically to address the arguments set forth in

Royal Alice's Memorandum of Points and Authorities in Support of Debtor Alice Properties,

LLC's Motion for Summary Adjudication ("Debtor's Memorandum").  Both Debtor's Motion

and Debtor's Memorandum and its other supporting pleadings were filed on August 29, 2020.

Royal Alice requests summary judgment on three of its four claims for declaratory relief

set forth in Debtor's Complaint for Declaratory Relief in this Adversary Proceeding.  In

particular Royal Alice claims: (1) Debtor is entitled to credit against the AMAG Loan in the sum

of $392,779.75 paid to Palm Finance Corporation ("Palm") after a foreclosure on Peter

Hoffman's residence in Los Angeles, California, (2) Debtor is entitled to a credit against

AMAG's Loan in the sum of $366,250.00 based on a claim that this amount was used by Susan

Hoffman to purchase 36,625 Preferred Shares of Stock that Debtor now claims was a simulation,

and (3) Debtor is entitled to a credit against the AMAG Loan for the sum of $3,838,850.10 based

on the contention the loan was usurious.

Debtor had filed Declarations of Susan H. Hoffman and Peter M. Hoffman in support of

Debtor's Motion.  AMAG has filed Objections and Motion to Strike Paragraphs of the

Declarations of Susan L. Hoffman and Peter Hoffman ("AMAG's Objections") because they

contain inadmissible evidence.

On August 28, 2020, AMAG filed a Motion for Summary Judgment ("AMAG's

Motion"), supported by Defendant AMAG, Inc.'s Memorandum in Support of Motion for

DEFENDANT'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTION FOR
SUMMARY ADJUDICATION - 1

Summary Judgment ("AMAG's Memorandum"), the Declarations of Steven C. Markoff, Robert Frcek and John F. Kurtz, Jr. and the exhibits attached to those Declarations and Defendant AMAG, Inc.'s Rule 56.1 Statement of Material Facts As to Which There Does Not Exist a Genuine Issue to Be Tried ("AMAG's Statement of Facts").

Each of Royal Alice's three claims for which Royal Alice seeks summary judgment are the subject of AMAG's Motion.  As discussed in AMAG's Memorandum, AMAG seeks summary judgment on all four of Royal Alice's claims for declaratory relief in this case.  First, Royal Alice seeks a declaratory judgment that the loan is usurious and subject to forfeiture pursuant to La. R.S. 9:3501 based on its allegation that the loan was not for commercial, business or agricultural purposes.  To the contrary, the loan was made for commercial and business purposes and is, therefore, exempt from the usury law pursuant to LSA-R.S. 9:3509. Paragraph 1 of the Loan Agreement expressly provides in relevant part:

> Borrowers warrant and represent that the Loan will be used
> exclusively for business and commercial purposes and is not being
> used for personal or household purposes.

There were other representations in the documents signed by Susan Hoffman that the loan was exclusively for commercial and business purposes.  Furthermore, prior to signing the Loan Agreement, Susan Hoffman signed a Term Sheet expressly stating the loan proceeds would be used solely for commercial purposes.

Second, Royal Alice seeks a declaratory judgment that the loan is in excess of the maximum amount of default interest permitted by La. R.S. 9:3509B(1)(b).  To the contrary, the Loan Agreement provides for a default rate of interest of 18% per annum.  Because the loan was for an amount in excess of $250,000.00, the simple interest rate limit after a default is 21% pursuant to LSA-R.S. 9:3509B.(1)(b).

DEFENDANT'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTION FOR
SUMMARY ADJUDICATION - 2

Third, Royal Alice seeks a declaratory judgment that $366,250.00 of the principal amount loaned pursuant to the Loan Agreement to purchase 36,625 shares of Seven Arts Entertainment, Inc. preferred stock was a "simulation" that precludes AMAG's right to repayment of that amount and any interest on that amount.  The Stock Purchase Agreement signed by Susan Hoffman contains detailed representations that she conducted her own investigation of the investment in the preferred shares.  Furthermore, a few days before the loan was made, Peter Hoffman sent an email to AMAG and Susan Hoffman stating that the stock purchase would be paid by investors in Seven Arts Entertainment, Inc. ("SAE") within three months after the loan was to be made.  The sale of the preferred stock was not a simulation.

Fourth, Royal Alice seeks a declaratory judgment that AMAG should be required to reduce the loan balance by the amount of $392,779.75 paid to Palm after a foreclosure on Peter Hoffman's residence in Los Angeles, California.  Royal Alice has previously contended that the balance of the AMAG loan should be reduced by the amount received by Palm because the statute of limitations has run on Palm's right to recover on the personal guaranty of Peter Hoffman.  However, under California law, the four-year statute of limitations does not begin to run until the last payment on the loan has been received and several payments had been received on the loan within four years prior to the application of payment from the foreclosure.  In addition, Mr. Hoffman expressly waived the statute of limitations in his guaranty, which is enforceable under California law.  As a result, Royal Alice's claim is meritless.

**II.**

**ARGUMENT**

A.    **The Amount Received by Palm from the Foreclosure Sale Should Not Be Credited to the AMAG Loan.**

The reasons why this Court should grant summary judgment in favor of AMAG and against Royal Alice on the claim that Royal Alice is entitled to a "foreclosure credit" in the amount of $392,779.75 paid to Palm from the foreclosure on Peter Hoffman's residence in Los Angeles, California, is discussed in AMAG's Memorandum at pages 15-22.

In support of this claim, Royal Alice relies exclusively on the Declaration of Peter Hoffman, the husband of Susan Hoffman. As Mr. Hoffman acknowledges, he was convicted of wire fraud charges after a jury trial in April 2015, which he asserts was a miscarriage of justice. Declaration of Peter M. Hoffman ("*Peter Hoffman Dec.*") ¶ 2. In *United States v. Hoffman*, 901 F.3d 523 (5th Cir. 2018), the Fifth Circuit affirmed Peter Hoffman's convictions for the crimes of conspiracy, wire fraud, and making material false statements to federal officials, as well as the criminal convictions of Susan Hoffman.

The statements of Peter Hoffman regarding the Queens Road foreclosure are found in paragraphs 3-15 of his Declaration. As discussed in AMAG's Objections, most of Peter Hoffman's Declaration contains inadmissible statements that provide no support to Debtor's Motion. Moreover, the undisputed facts set forth in AMAG's Statement of Facts and discussed in AMAG's Memorandum show there is no genuine issue of fact that precludes summary judgment in favor of AMAG and that Debtor's Motion should be denied.

First, Peter Hoffman declares that on the date of the foreclosure no amounts were due on loans made by Palm in 2003 for the financing of two motion pictures entitled "Asylum" and "No

Good Deed."  AMAG has never suggested otherwise.  However, Peter Hoffman omits from his

Declaration the following undisputed material facts.

On February 15, 2006, Palm entered into an Assignment of Loan Documents agreement

with Arrowhead Target Fund, Ltd. to transfer a portion of the balances owed for the movies

Asylum and No Good Deed in addition to many of the loan documents associated with those

loans.  *Frcek Dec.* ¶ 29, Exh. 25.  However, the Queens Road DOT was not included in the

transfer.  To the contrary, Peter Hoffman and Susan Hoffman signed a Secured Promissory Note

payable to AMAG on February 15, 2006, for the amount of $601,347.60, which expressly

identified the Queens Road DOT as security for that promissory note.  *Frcek Dec.* ¶ 30, Exh. 26,

§ 8.

On May 7, 2007, Palm loaned the principal amount of $5,500,000.00 to New Moon

Pictures, LLC, Pool Boy the Movie, LLC ("Autopsy Loan") and on January 8, 2009, Peter

Hoffman signed a Continuing Personal Guaranty pursuant to which he agreed to guaranty the

Autopsy Loan.  *Frcek Dec.* ¶ 31, Exh. 27; *Frcek Dec.* ¶ 32, Exh. 28.

On November 24, 2010, Palm, the borrowers of the Autopsy Loan and Peter Hoffman

entered into Forbearance and Workout Agreement #5.  *Frcek Dec.* ¶ 33, Exh. 29.  Section 2 z) of

that agreement expressly provided that one of the "Conditions to Forbearance" was as follows:

> The Deed of Trust, recorded in Los Angeles County, California on
> December 18, 2003 as Instrument No. 03 3736332, encumbering
> the real property located at 1643 Queens Road, Los Angeles,
> California ("Queens Road Property") shall remain in full force and
> effect and shall be security for the Hoffman Guaranty and all other
> guaranties from Hoffman regarding amounts owed to Lender
> ("Hoffman Guaranties").  In the event, that Deed of Trust has been
> reconveyed or otherwise is no longer an encumbrance against the
> Queens Road Property, Hoffman agrees to execute another Deed of
> Trust on Queens Road Property to secure payment of the Hoffman
> Guaranties in a form of Deed of Trust acceptable to Lender and to

DEFENDANT'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTION FOR
SUMMARY ADJUDICATION - 5

make any modifications or amendments to the Deed of Trust reasonably requested by Lender to perfect the Deed of Trust in favor of Lender.

On October 28, 2011, Palm, the borrowers of the Autopsy Loan and Peter Hoffman entered into Forbearance and Workout Agreement #6. *Frcek Dec.* ¶ 34, Exh. 30. Section 3 x) of that agreement expressly provided that one of the "Conditions to Forbearance" was as follows:

> The Deed of Trust, recorded in Los Angeles County, California on December 18, 2003 as Instrument No. 03 3736332, encumbering the real property located at 1643 Queens Road, Los Angeles, California ("Queens Road Property") shall remain in full force and effect and shall be security for the Hoffman Guaranty and all other guaranties from Hoffman regarding amounts owed to Lender ("Hoffman Guaranties"). In the event, that Deed of Trust has been reconveyed or otherwise is no longer an encumbrance against the Queens Road Property, Hoffman agrees to execute another Deed of Trust on Queens Road Property to secure payment of the Hoffman Guaranties in a form of Deed of Trust acceptable to Lender and to make any modifications or amendments to the Deed of Trust reasonably requested by Lender to perfect the Deed of Trust in favor of Lender.

On or about August 1, 2016, Peter Hoffman and Susan Hoffman executed a second Deed of Trust encumbering the Queens Road Property ("Second DOT"). *Frcek Dec.* ¶ 35, Exh. 31. The Second DOT was recorded on August 12, 2016, in Los Angeles County, California, as Instrument No. 20160960925.

Thus, the record in this case establishes that Peter Hoffman expressly agreed that the Queens Road DOT would remain as security for his personal guaranty of the Autopsy Loan in both Forbearance and Workout Agreement #5 and #6 in 2010 and 2011.

It should also be recognized in the Complaint filed by Royal Alice in this adversary proceeding that the basis for claiming the Foreclosure Credit is the allegation that the statute of limitations in California has expired on all claims by Palm against Peter Hoffman and that he,

DEFENDANT'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTION FOR SUMMARY ADJUDICATION - 6

therefore, should be allowed to direct the payment to Palm be applied against the AMAG Loan, which is also personally guaranteed by Peter Hoffman.

Royal Alice appears to have abandoned the statute of limitations allegation with good reason. As discussed in AMAG's Memorandum, the statute of limitations on Palm's claim against Peter Hoffman on his personal guaranty of the Autopsy Loan has still not lapsed. AMAG Memorandum at 19-22.

Royal Alice cites to Peter Hoffman's Declaration in which he repeatedly states that he permitted the foreclosure sale solely so payment could be made on the AMAG Loan, without ever saying when those comments were made. However, the record establishes that Peter Hoffman never suggested that the amount received from the Queens Road foreclosure should be applied against the AMAG Loan. *Frcek Dec.* ¶ 40, Exh. 35; *Markoff Dec.* ¶ 17, Exh. 9. Indeed, the record shows that Peter Hoffman sent an email to Steven Markoff on January 6, 2017, stating as follows:

> I am told that the trustee is making distributions of the $392,000 surplus and the trustee has no record of the Palm claim. If this is not taken care of the $392,000 will be lost to other creditors.

*Markoff Dec.* ¶ 17, Exh. 9.

Moreover, Peter Hoffman had no right to require Palm to apply the foreclosure proceeds against the AMAG Loan and Palm never agreed that the surplus proceeds from the foreclosure could be used for a payment against a loan made by AMAG. *Markoff Dec.* ¶ 18.

Beginning at page 14 of Debtor's Memorandum, Royal Alice cites to *Mississippi Land Co. v. S & A Properties II, Inc.*, 817 So. 2d 1200, 1204 (2002), and the following statement by that court:

Fundamental to the Louisiana Law of Obligations is La.Civ.Code art. 1864, which provides as follows:

> An obligor who owes several debts to an obligee has the right to impute payment to the debt he intends to pay.
>
> The obligor's intent to pay a certain debt may be expressed at the time of the payment or may be inferred from the circumstances known to the obligee.
>
> Thus, under Louisiana law, when an obligor fails to expressly state for which debt payment is being made, the payment is imputed to that [which] is most burdensome.

However, Louisiana Civil Code article  1864 only deals with a situation where several debts are owed to the same "obligee."  The payment from the foreclosure sale was made to Palm, which is a different corporation than AMAG.  The fact that Mr. Markoff is the controlling stockholder of both Palm Finance and AMAG does not support finding they are not separate entities.  There is nothing in this record that would allow this Court to conclude that Palm and AMAG should be treated as the same entity.  Declaration of Robert Frcek No. 2 ("*Frcek Dec. No. 2*"), ¶¶ __. Exhs. __ to ___.

Royal Alice next argues that Louisiana Civil Code article 1868 allows Peter Hoffman to apply monies paid to Palm from the foreclosure of the Queens Road Property because his personal guaranty of the loan to Royal Alice and Susan Hoffman is more "onerous" to him than the debt paid to Palm.

First, Peter Hoffman is not a Louisiana resident and Louisiana law is unlikely to apply to the payment to Palm that occurred in California.  Moreover, as discussed above, there is no basis for applying Louisiana Civil Code article 1868 to debts owed to separate obligees.  AMAG and Palm are separate entities.

It is also noteworthy that Royal Alice has asserted in the bankruptcy case that AMAG is over secured.  If that is accurate, then Peter Hoffman may never be called on to make payment on his personal guaranty of the loan made by AMAG, but remains liable for millions of dollars owed to Palm for the Autopsy Loan that Peter Hoffman guaranteed.

Royal Alice also argues that the 2003 Deed of Trust only secured the loan that was made in 2003 and, as a result, Peter Hoffman should be allowed to direct the amount paid to Palm to the loan made by AMAG to Royal Alice and Susan Hoffman.  However, as discussed above, the record in this case is clear that Peter Hoffman personally guaranteed the Autopsy Loan made by Palm in May 2007 and then signed Workout Agreement #5 on November 24, 2101, and Workout Agreement #6 on October 28, 2011, in which it was agreed that the 2003 Deed of Trust encumbering the Queens Road Property will remain in full force and effect and shall be security for the Hoffman Guaranty and all other guaranties from Hoffman regarding amounts owed to Palm.

It is also undisputed that Peter Hoffman and Susan Hoffman executed a second Deed of Trust encumbering the Queens Road Property on August 12, 2016, further securing Peter Hoffman's guaranty of the Autopsy Loan.

Finally, Royal Alice has asked this Court to take judicial notice of a Long Form Deed of Trust that appears to have been recorded on March 3, 2008, and has suggested that this Deed of Trust in favor of Jay Firestone would have priority to the second Deed granted to Palm. However, there is no evidence the obligation referenced in the Firestone Deed of Trust is still owing.  No claim was ever made by Firestone as the beneficiary of that Deed of Trust to Trustee Corp., which conducted the foreclosure sale of the Queens Road Property on behalf of Chase Bank.

DEFENDANT'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTION FOR SUMMARY ADJUDICATION - 9

Moreover, if the Firestone Deed of Trust is still valid and enforceable and if the 2003 Deed of Trust in favor of Palm Finance was no longer enforceable, which Palm clearly disputes, then Firestone would have received the surplus proceeds, not Peter Hoffman.

Royal Alice's claim that AMAG must reduce the balance owed pursuant to the AMAG Loan to Royal Alice and Susan Hoffman because Palm Finance received the surplus proceeds from the foreclosure of the Queens Road Property is meritless.  As a result, Royal Alice's motion for summary adjudication for declaratory judgment on that issue should be denied and AMAG's motion for summary judgment on Royal Alice's claim on that issue should be granted.

**B.      The Sale of the SAE Preferred Shares to Susan Hoffman Was Not a Simulated Sale.**

The reasons why this Court should grant summary judgment in favor of AMAG and against Royal Alice on the claim that the sale of the Preferred Shares to Susan Hoffman was a simulated sale is discussed in AMAG's Memorandum at pages 5-7 and 12-15.

Royal Alice's argument regarding the sale of Preferred Shares to Susan Hoffman is found in Debtor's Memorandum at pages 16 to 19.  Royal Alice begins its argument by citing several Louisiana cases regarding simulations that have no relevance to the facts in this case.  Thereafter, Royal Alice makes two basic arguments in an attempt to convince this Court that the Preferred Shares purchased by Susan Hoffman pursuant to the Stock Purchase Agreement was a simulated sale.

Royal Alice argues that Susan Hoffman received no consideration because Palm, which was not a party to the Stock Purchase Agreement, did not obtain the cancellation of its existing certificate on the books of SAE and it did not deliver a new certificate to Susan Hoffman as required by Nevada law.  Royal Alice then argues that because the certificate was never

DEFENDANT'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTION FOR SUMMARY ADJUDICATION - 10

delivered Susan Hoffman received no consideration.  This argument is disingenuous at best and certainly appears to be in bad faith.

The Stock Purchase Agreement is a valid and enforceable agreement between Susan Hoffman and AMAG pursuant to which Susan Hoffman agreed to purchase 36,625 shares of Series A Convertible Exchangeable Preferred Stock of Seven Arts Entertainment, Inc.  *Frcek Dec.* ¶ 14, Exh. 10.  Peter Hoffman was the Chief Executive Officer of SAE.  *Id.* at AMAG000215.

The third, fourth and fifth "WHEREAS" clauses in the Stock Purchase Agreement expressly provide as follows:

> WHEREAS, Seller and the Shares are subject to the terms and conditions of an Investor's Rights Agreement dated as of October 26, 2011 ("*Investor Rights Agreement,*" a copy of which is attached hereto as Exhibit B); and
>
> WHEREAS, Section 2.11 of the Investor Rights Agreement requires, as a condition to the sale or transfer of the Shares, that notice of such sale or transfer be given to the Company and that Buyer take and hold the Shares subject to the provisions and upon the conditions specified in the Investor Rights Agreement.
>
> WHEREAS, Seller has given or will give notice to the Company in the form attached hereto as Exhibit C; and Seller wishes to sell to Buyer, and Buyer wishes to purchase from Seller, the Shares, subject to the terms and conditions set forth herein and in the Investor Rights Agreement.

Exhibit C to the Stock Purchase Agreement referenced in the fifth WHEREAS clause quoted immediately above is a Notice to Company Pursuant to Section 2.11 of the Investor's Rights Agreement.

The last paragraph of that Notice provides:

> Notice is hereby given, in accordance with Section 2.11 of the Investor's Rights Agreement, that Seller has entered into a Stock Purchase Agreement dated as of July 31, 2013 ("SPA") with

DEFENDANT'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTION FOR SUMMARY ADJUDICATION - 11

> SUSAN L. HOFFMAN, an individual residing at 900 Royal Street, New Orleans, Louisiana 70116 ("Buyer"), providing for the sale by Seller and purchase by Buyer of 36,625 shares of Company's Series A. Convertible Exchangeable Preferred Stock (the "Shares") for $366,250, or $10.00 per share.  The transfer will occur in compliance with Rule 144 under the Securities Act of 1933 and applicable securities transaction exemptions under the securities laws of the states of California and Louisiana.

The Secretary/Treasurer of AMAG, Dennis Lautzenheiser, signed and dated that Notice to Company on July 31, 2013, and it was sent to SAE's Chief Executive Officer, Peter Hoffman. *Frcek Dec. No. 2*, ¶ 6, Exh. 1 [Bates No. AMAG002859].

On November 1, 2013, Robert Frcek, AMAG's chief financial officer, received an email from Peter Hoffman forwarding an email sent to him by Mark Grober, WHC Capital, LLC, relating to the sale of 36,625 SAE Preferred Shares by AMAG to Susan Hoffman on July 31, 2013, requesting copies of the Investor's Rights Agreement signed by Palm, a copy of the assignment agreement pursuant to which Palm transferred the SAE Preferred Shares to AMAG that were subsequently purchased by Susan Hoffman and proof of payment by Palm for the purchase of the SAE Preferred Shares by Palm from Seven Arts in 2011.  *Frcek Dec. No. 2, ¶* 5, Exh. 1.

In response to the request from Peter Hoffman for the documents identified in Mark Grober's email of November 1, 2013, described above, Robert Frcek sent an email to Peter Hoffman, with a copy to Susan Hoffman at her email address of "misszuzu@earthlink.net," attaching all of the documents that Peter Hoffman had requested, including the Notice to Company Pursuant to Section 2.11 of Investor's Rights Agreement ("Notice to Company") signed by Dennis Lautzenheiser as the Secretary/Treasurer of AMAG on July 31, 2013.  Robert

Frcek's response to Peter Hoffman's email dated November 1, 2013, is included in Exhibit 1 to his Declaration.

As discussed above, the Notice to Company sent to Peter Hoffman on November 1, 2013, expressly notified SAE that Susan Hoffman had purchased 36,625 shares of the Company's Series A Convertible Exchangeable Preferred Stock for $366,250.00.

After Robert Frcek sent his email to Peter Hoffman, with a copy to Susan Hoffman, on November 1, 2013, he never received another request for information from Peter Hoffman.  As a result, Mr. Frcek concluded that Peter Hoffman and Susan Hoffman had received all of the information they needed to allow Susan Hoffman to sell the SAE Preferred Shares that she had purchased on July 31, 2013, from AMAG.  *Frcek Dec. No. 2, ¶ 8.*

Royal Alice has filed the Declaration of Peter Hoffman in support of Debtor's Motion.  In paragraph 18 of that Declaration, Peter Hoffman states that Palm failed to deliver the SAE Preferred Stock to Susan Hoffman because "SAE did not issue a new certificate to Mrs. Hoffman as required by SAE's By-laws."[1]  Peter Hoffman then states: "no preferred stock would be issued to Mrs. Hoffman absent execution of a certificate by two officers of SAE and no such certificate was ever prepared or executed by any officer of SAE."[2]  However, SAE's failure to issue the

---

[1] The SAE Preferred Stock was sold by AMAG to Susan Hoffman.  Palm was not a party to the Stock Purchase Agreement and obviously had no duty to deliver any documents to Susan Hoffman or anyone else related to the sale of the SAE Preferred Shares pursuant to the Stock Purchase Agreement.

[2] There is no way for AMAG to verify whether Peter Hoffman is telling the truth when he says that no preferred shares were ever issued to Susan Hoffman.  However, it should be noted that notwithstanding AMAG's request for production of all documents supporting Royal Alice's claims, no stock ledgers or other documents have been produced that would verify the statement in Peter Hoffman's Declaration.

DEFENDANT'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTION FOR SUMMARY ADJUDICATION - 13

SAE Preferred Shares to Susan Hoffman was not due to any failure to perform by AMAG pursuant to the Stock Purchase Agreement.

Thus, the record in this case is undisputed that AMAG sent the Notice to Company Pursuant to Section 2.11 of Investor's Rights Agreement signed by Dennis Lautzenheiser as the Secretary/Treasurer of AMAG on July 31, 2013, to both Peter Hoffman and Susan Hoffman. Pursuant to that Notice to Company, SAE was unquestionably notified that Susan Hoffman had purchased 36,625 Preferred Shares of SAE from AMAG pursuant to the Stock Purchase Agreement.

Thus, Susan Hoffman cannot establish that AMAG failed to transfer the Preferred Shares purchased pursuant to the Stock Purchase Agreement to Susan Hoffman. If the Preferred Shares were never transferred on the books and records of SAE, Susan Hoffman would not have a claim against AMAG or be allowed to rescind the transaction with AMAG, her claim would be against SAE for failing to recognize her ownership of the Preferred Shares as clearly provided in the Notice to Company. Of course, noticeably absent from the record in this case is any evidence that Susan Hoffman is not identified as the owner of the Preferred Shares in the books and records of SAE. For all of the reasons set forth above and discussed in AMAG's Objections, the paragraphs in Peter Hoffman's Declaration suggesting that AMAG breached the Stock Purchase Agreement are inadmissible.

Moreover, even if it could be shown that AMAG did not do something it was required to do to transfer the Preferred Shares to Susan Hoffman, that would not mean the Stock Purchase Agreement was a simulation. Susan Hoffman would have had the right to simply request AMAG perform whatever additional act was necessary to transfer the SAE Preferred Shares. The contention that Susan Hoffman could enter into the Stock Purchase Agreement but could

DEFENDANT'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTION FOR SUMMARY ADJUDICATION - 14

later rescind the agreement without notifying AMAG that something else needed to be done to transfer the Preferred Shares is absurd.

Royal Alice's second argument is that Susan Hoffman had no interest in purchasing the Preferred Shares and that Steve Markoff told her the Preferred Shares were "almost worthless" is also meritless.  As discussed in AMAG's Memorandum at pages 5-7 and 12-15, the Stock Purchase Agreement signed by Susan Hoffman contains express representations by Susan Hoffman that she had conducted her own investigation of the investment in the Preferred Shares and that she had such knowledge and experience in business and financial matters to enable her to utilize the information made available to her by Seven Arts Entertainment, Inc. to protect her own interests, to evaluate the merits and risks of her investment in the shares and to make an informed investment decision.  *Frcek Dec.* ¶ 14, Exh. 10.

Furthermore, on July 26, 2013, five days before Susan Hoffman signed the Stock Purchase Agreement, emails were exchanged between AMAG, Susan Hoffman and Peter Hoffman regarding the ability of the borrowers to repay the loan.  *Frcek Dec.* ¶ 15, Exh. 11.  In one of the those emails Peter Hoffman addressed Susan Hoffman's ability to repay the loan by indicating that she would be able to sell the preferred stock to be purchased by selling those shares to other investors of SAE stock, stating:

> The Seven Arts stock purchase will be funded by Seven Arts
> Investors within the next three months including interest.

*Frcek Dec.* ¶ 15, Exh. 11 at 1.

AMAG has discussed Louisiana law regarding when a simulated transaction occurs at pages 13 to 14 of AMAG's Memorandum.  As discussed in AMAG's Memorandum, the transfer of the SAE Preferred Shares by AMAG to Susan Hoffman was not a simulation.  Susan Hoffman

DEFENDANT'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTION FOR SUMMARY ADJUDICATION - 15

represented in the Stock Purchase Agreement that she was responsible for determining the value of the shares being purchased.

Peter Hoffman sent an email to Susan Hoffman and AMAG on July 26, 2013, representing that the amount being loaned to purchase the SAE Preferred Shares would be paid within the following three months by persons investing in SAE. *Frcek Dec.* ¶ 15, Exh. 11; *Markoff Dec.* ¶ 15, Exh. 7. Furthermore, as noted above, Peter Hoffman requested additional documents from AMAG in November 2013 to facilitated a sale of the SAE Preferred Shares acquired by Susan Hoffman from AMAG pursuant to the Stock Purchase Agreement.

On July 28, 2013, Mr. Markoff sent an email to Susan Hoffman and Peter Hoffman describing some of the risks of the loan, including that the shares being purchased could be "almost worthless." Susan Hoffman responded that she would go through with the purchase, stating: "About the $366,000 of securities buy-back. Seth and Neil are committed to buying/selling these securities." *Markoff Dec.* ¶ 16, Exh. 8.

It is well-settled jurisprudence in Louisiana that when the actual consideration, no matter how inadequate, has been paid by the purchaser, the transaction is not a simulated sale. *E.g.*, *Citizens' Bank & Tr. Co. v. Willis*, 162 So. 822 (La. 1935); *Succession of Quaglino*, 232 La. 870, 886 (Sup. Ct. La. 1957).

Royal Alice's motion for summary judgment declaring the Stock Purchase Agreement to have been a simulation should be denied and AMAG's motion for summary judgment on this issue should be granted.

**C.    The Loan Agreement Is Not Usurious Pursuant to La. R.S. 9:3501.**

The reasons why this Court should grant summary judgment in favor of AMAG that the AMAG Loan was not usurious are discussed in AMAG's Memorandum at pages 3-5 and 8-11.

DEFENDANT'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTION FOR SUMMARY ADJUDICATION - 16

Royal Alice's argument that the interest on the AMAG Loan is usurious is found in

Debtor's Memorandum at pages 19 to 23.

As discussed in AMAG's Memorandum, the last sentence of paragraph 1 of the Loan

Agreement expressly provides:

> Borrowers warrant and represent that the Loan will be used
> exclusively for business and commercial purposes and is not being
> used for personal or household purposes.

Paragraph 1 of Loan Agreement expressly identified the purposes for which the loan was

to be used: (1) $1.7 million for repayment of the Whitney Bank loans that were being transferred

to AMAG, (2) $366,250.00 for the purchase of the SAE Preferred Stock, (3) loan and legal fees

for the loan, and (4) amounts expected to be used to settle a JonesFilm litigation judgment, each

of which was expressly represented as exclusively for business and commercial purposes.

The promissory notes for loans transferred by Whitney Bank to AMAG expressly state:

> APPLICABLE LENDING LAW.  To the extent not preempted by
> federal law, this business or commercial loan is being made under
> the terms and provisions of La. R.S. 9:3509, et. seq.

Representations that the loan was for commercial purposes were also made by Peter

Hoffman and Susan Hoffman in other correspondence.  Steven C. Markoff sent an email to Peter

Hoffman on May 9, 2013, stating in relevant part:  "100% of the loan proceeds must be used for

commercial [not personal] purposes."  In response to that email, Peter Hoffman sent an email on

May 10, 2013, to Mr. Markoff, with a copy to Susan Hoffman, stating in relevant part:  "The

proceeds are being used to repay the existing mortgage, costs of this loan and a reserve for

Jonesfilm.  I believe these are commercial purposes within your intent."  *Frcek Dec.* ¶ 11,

Exh. 7.  Similar representations that the loan would be used exclusively for business and

commercial purposes were made by Susan Hoffman in other correspondence with AMAG. *Frcek Dec.* ¶ 12, Exh. 8.

AMAG representatives were never told that the loan was being made for anything other than commercial purposes, it was never suggested that AMAG could not rely upon the warranty and representation in the last sentence of Section 1 of the Loan Agreement or that there was anything that caused Mr. Markoff to believe the warranty and representation were not accurate. *Markoff Dec.* ¶ 8.

La. R.S. 9:3509 expressly provides an exception to the maximum interest rate of interest for loans made for business of commercial purposes.

In support of Debtor's Motion, Debtor has filed the Declaration of Susan Hoffman in which she suggests that the loan proceeds may not have been used for business and commercial purposes and, therefore, may have become usurious when the interest rate increased from 12% to 18% when the Debtor and Ms. Hoffman defaulted on the loan payments to AMAG.  However, the Debtor's attempt to rely on Ms. Hoffman's Declaration is precluded by the Louisiana parol evidence rule.

The most important rule barring the use of testimonial proof is the parol evidence rule, which recognizes that parol (testimonial) evidence is not admissible to contradict, vary or modify a written instrument.  LA. CIV. CODE art. 1848; *Gulf States Fin. Corp. v. Airline Auto Sales, Inc.*, 181 So. 2d 36 (La. 1965).  The most common application of the parol evidence rule is where an agreement is reduced to a writing that is intended to reflect the complete agreement between the parties, which is usually evidenced by a clause in the agreement.  *Johnson v. Orkin Exterminating Co.*, 746 F. Supp. 627 (E.D. La. 1990); *Kirsch v. Pier Orleans, Inc.*, 363 So. 2d 1182 (La. Ct. App. 4th Cir. 1978).  In such situations, the parol evidence rule bars testimonial

DEFENDANT'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTION FOR SUMMARY ADJUDICATION - 18

proof that would contradict, vary or modify the terms of the writing. Louisiana courts have not allowed parol evidence that is "against or beyond" that which is in the written contract. *Placid Ref. Co. v. Privette*, 523 So. 2d 865, 867 (La. Ct. App. 1st Cir. 1988) (quoting *Land & Offshore Co. v. Martin*, 469 So. 2d 1177, 1181 (La. Ct. App. 3d Cir. 1985), *writ denied*, 524 So. 2d 748 (La. 1988)). This rule is to protect the integrity of written agreements. *First Nat'l Bank v. Campo*, 537 So. 2d 268-71 (La. Ct. App. 4th Cir. 1988), *writ denied*, 538 So. 2d 578 (La. 1989).

Here, the Loan Agreement includes a merger clause in Paragraph 17 that provides in relevant part: "This Agreement with the Loan Documents embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof; . . . ." *Frcek Dec.* ¶ 5, Exh. 1 [AMAG002775].

For the reasons stated above, AMAG has filed its Motion to Strike, which includes striking Paragraphs 9 to 14 of the Declaration of Susan Hoffman in which Ms. Hoffman suggests that the loan was not made for business and commercial purposes.

Not surprisingly, AMAG has been unable to find a Louisiana published opinion where a borrower, who had unequivocally represented a loan would be used exclusively for commercial purposes, claimed that the court should conclude the loan was not for commercial purposes. Indeed, such a loan would almost certainly be found to have been fraudulently obtained by the borrower.

At page 13 of Royal Alice's Memorandum, Royal Alice cites *Spencer v. Boucher*, 519 So. 2d 1197 (La. Ct App. 1988), which Royal Alice states is "the leading case on application of the commercial and business loan exception to the usury law." AMAG relied upon *Spencer* at page 10 of AMAG's Memorandum. As discussed in that memorandum, in *Spencer*, a debtor brought an action against the lender alleging the promissory note, which provided for interest at

DEFENDANT'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTION FOR SUMMARY ADJUDICATION - 19

16%, called for the payment of usurious interest. The debtor had told the lender that she wanted to borrow $26,000.00, of which $16,888.75 was to be used to pay off an existing mortgage on her house and to buy stock in a convenience store to be operated by she and her son.

The trial court found that the interest rate was 16% but that the loan was a business or commercial loan and did not violate usury laws. The Court of Appeals held that the loan was exempt from the usury law pursuant to LSA-R.S. 9:3509 as a loan made for business or commercial purposes because the debtor had always represented to the creditor that her purpose was to open a business with her son. The Court of Appeals also addressed an alternative argument made by the debtor that "the loan instrument itself must specify that it is for business or commercial purposes in order to claim the benefit of an exception to usury," relying on *Coffey v. Peoples Mortgage & Loan of Shreveport*, 408 So. 2d 1153 (La. Ct. App. 1981). The *Spencer* Court of Appeals concluded that *Coffey* had no application in and that it "was not necessary to express an intent in writing in order to trigger the business and commercial purpose exception" to the usury law.

In *Jefferson Door Co. v. Lewis*, 713 So. 2d 835, 838 (La. Ct. App. 1998), the court stated that in *Spencer v. Boucher*, the "Court held that the transaction was commercial noting that the deciding factor was the debtor's objective representations." *Id.* at 838. The *Jefferson* court then concluded that the loan in that case was for commercial purposes and not usurious because "there were no objective representations that the items being purchased were for personal use. The credit application does not evidence the fact that defendant was purchasing the merchandise for personal use." *Id.*

Unquestionably in this case, Susan Hoffman's objective representations were that the loan was exclusively for commercial and business purposes. In fact, she stated expressly in the

loan documents that the loan was indeed for a business purpose. The Declaration she has filed in support of Royal Alice's Motion cannot be used to show otherwise. Moreover, for the reasons discussed in AMAG's Objections, the paragraphs suggesting otherwise in Susan Hoffman's Declaration are inadmissible and do not create a genuine question of fact precluding summary judgment in favor of AMAG on Debtor's usury claim in this case.

Royal Alice's motion for summary judgment that the loan is usurious should be denied and summary judgment should be granted in favor of AMAG on that issue.

## III.
## CONCLUSION

For the reasons discussed above and in AMAG's Memorandum, this Court should deny Royal Alice's Motion for Summary Judgment and grant AMAG's Motion for Summary Judgment.

Respectfully Submitted,

/s/ John F. Kurtz, Jr.
**John F. Kurtz, Jr. (Admitted *Pro Hac Vice*)**
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 Main Street, Suite 1000
P.O. Box 1617
Boise, ID 83701-1617
Telephone: 208.344.6000
Facsimile: 208.954.5232
Email: jkurtz@hawleytroxell.com
Attorney for AMAG, Inc.

DEFENDANT'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTION FOR SUMMARY ADJUDICATION - 21

<u>CERTIFICATE OF SERVICE</u>

  I certify that a copy of DEFENDANT AMAG, INC.'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTION FOR SUMMARY ADJUDICATION on 18th day of September, 2020, resulting in service via the Court's CM/ECF system as follows:


Leo D. Congeni on behalf of Plaintiff Royal Alice Properties, LLC
leo@congenilawfirm.com, michelle@congenilawfirm.com

 Richard W. Martinez on behalf of Defendant AMAG, Inc.
Richard@rwmaplc.com, Claire@rwmaple.com

John F. Kurtz, Jr. on behalf of Defendant AMAG, Inc.
jkurtz@hawleytroxwell.com,  lhanks@hawleytroxell.com




         */S/Richard W. Martinez*        
         **RICHARD W. MARTINEZ**

DEFENDANT'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTION FOR
SUMMARY ADJUDICATION - 22