UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. 19-12337 |
| ROYAL ALICE PROPERTIES, LLC | SECTION "A" |
| DEBTOR | CHAPTER 11 |

**************************************  **************************************

ROYAL ALICE PROPERTIES, LLC

      PLAINTIFF                         **ADV NO. 19-01133**

VERSUS

AMAG, INC.

      DEFENDANT

**DEFENDANT AMAG, INC.'S RESPONSE TO DEBTOR'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS**

Defendant AMAG, Inc. responds to Debtors Statement of Undisputed Facts as follows:

A.  Peter's Credit

1.      Mr. Hoffman entered into a Settlement Agreement dated October 21, 2016 ("Chase Settlement") with JP Morgan Chase Bank N.A. ("Chase") where he agreed to dismiss with prejudice his pending action against Chase for improper foreclosure and agreed to a stipulated foreclosure sale of his personal residence at 1643 Queens Rd. in Los Angeles ("Peter's Home"). Declaration of Peter Hoffman ("PMH Dec.") ¶¶3-4 & Ex. 1 (Complaint against Chase), Ex. 2 (Chase Settlement).

      <u>AMAG'S Response</u>: Not disputed.

2. Peter's Home was sold at a foreclosure sale on or about October 27, 2016 for $1,500,000 pursuant to a deed of trust in favor of Chase's assignor ("Chase DOT") and a statement of the amount due, approximately $1,100,000. PMH Dec. ¶5 & Ex. 3 (Chase statement); Request For Judicial Notice ("RJN") Item A (Deed of Sale) & Item B (Chase deed of trust).

AMAG's Response: Not disputed.

3. Mr. Hoffman executed a deed of trust on Peter's Home dated November 19, 2003 ("2003 DOT") with Palm Finance Corp. ("Palm"), an affiliate of AMAG, as beneficiary to secure the indebtedness arising in connection with the production of the motion pictures entitled "Asylum" and "No Good Deed" ("A/NGD Debt"). PMH Dec. ¶6; RJN Item C (DOT).

AMAG's Response: Not disputed.

4. No amounts were due under the A/NGD Debt on the date of the foreclosure sale. PMH Dec. ¶7; Declaration of Leo Congeni ("Congeni Dec.") ¶ 2 & Ex. 1 (AMAG Responses to Debtor's Interrogatories)

AMAG's Response: Undisputed. However, AMAG has objected on grounds of relevancy. See Objection and Motion to Strike Paragraphs of the Declarations of Susan L. Hoffman and Peter M. Hoffman Filed in Support of Debtor's Motion for Summary Adjudication ("**AMAG's Objections**") at p. 8, Objection 2 to Paragraph 7 of the Declaration of Peter Hoffman.

5. The 2003 DOT as filed in the Los Angeles County property records was never amended to apply to other later indebtedness in favor of Palm and any such amendment would

have no retroactive effect and give Palm priority over then existing deeds of trust encumbering Peter's Home. PMH Dec. ¶8; RJN Items B through F.

AMAG's Response: Disputed to the extent Debtor is claiming that Peter Hoffman did not agree that the 2003 DOT would remain as encumbrance against the Queens Road property to secure Peter Hoffman's guaranty of the Autopsy Loan. See AMAG's Objections at p. 9 to Paragraph 8 of the Declaration of Peter Hoffman. See Defendant AMAG, Inc. Rule 56.1 Statement of Material Facts as to Which There Does Not Exist a Genuine Issue to Be Tried ("**AMAG Rule 56.1 Statement**") ¶¶ 25 – 39.

6. On the date of the foreclosure sale, these deeds of trust encumbered Peter's Home in the following order of priority: (a) Chase DOT for approximately $1,100,000, (b) the 2003 DOT, (c) a "second" deed of trust in favor of Washington Mutual Bank F.A. for $500,000, (d) a judgment lien in favor of Jay Firestone for $350,000 and (e) a deed of trust in favor of Palm securing other film indebtedness executed and filed long after the four deeds of trust senior in priority ("2016 DOT"). PMH Dec. ¶ 9; RJN Items B through F.

AMAG's Response: Disputed. See AMAG's Objections at p. 9-10 to Paragraph 9 of the Declaration of Peter Hoffman.

7. Mr. Hoffman was personally liable to pay the amounts due under the AMAG Loan pursuant to his Guaranty dated July 31, 2013. PMH Dec. If1 0 & Ex. 4 (Guaranty).

AMAG's Response: Not disputed.

8. Mr. Hoffman instructed the trustee under the 2003 DOT to pay to Palm all proceeds in excess of the first deed of trust in favor of Chase. Palm relied on the 2003 DOT to obtain payment of the excess proceeds from the foreclosure sale of Peter's Home because the

2016 DOT was junior to the other encumbrances on Peter's Home and no further sums were then due pursuant to the 2003 DOT. PMH Dec. ¶11 & Ex. 5 (emails to trustee)

<u>AMAG's Response</u>: Denied. AMAG's Objections at p. 10, Objection 5. to Paragraph 11 of the Declaration of Peter Hoffman.

9. On June 1, 2017, the trustee paid the sum of $392,779,75 to Palm. PMH Dec. ¶12 & Ex. 6 (Email exchange confirming receipt of funds).

<u>AMAG's Response</u>: Not disputed.

10. Mr. Hoffman entered into the Chase Settlement and instructed the trustee under the Chase DOT to pay funds to Palm solely in payment on his Guaranty of the AMAG Loan. Mr. Hoffman wanted the funds to apply to his Guaranty because it was the most onerous debt he owed to Palm or AMAG and because he received no benefit from paying down any other indebtedness since the collateral securing the other indebtedness had already been assigned to Palm and Mrs. Hoffman would lose her home if the AMAG Loan was not paid. PMH Dec. ¶13 & Ex. 7 (Settlement of film debts and assignment of collateral with Palm).

<u>AMAG's Response</u>: Disputed. AMAG Rule 56.1 Statement, ¶¶ 4344; AMAG's Objections at p. 10-11, Objection 6 to Paragraph 13 of the Declaration of Peter Hoffman.

11. When Palm advised Mr. Hoffman that it received the funds and that it did not intend to follow his instructions, Mr. Hoffman immediately objected in writing and stated: "Ouch!! This should be applied to Susan's loan." Indeed, Mr. Hoffman repeatedly stated to Steven Markoff, the principal of Palm and AMAG, that he permitted the foreclosure sale solely so he could make a payment on the AMAG Loan. PMH Dec. ¶14 & Ex. 6 (email exchange).

AMAG's Response: AMAG's Objections at p. 11-12, Objection 7. to Paragraph 14 of the Declaration of Peter Hoffman.

12. At all relevant times, AMAG and Palm were a single business enterprise owned and controlled by Steven Markoff and operating from his office in Los Angeles. PMH Dec. ¶23

AMAG's Response: Disputed. Declaration No. 2 of Robert Frcek, ¶¶9-11, Exhs. 2 & 3; AMAG's Objections at p. 16, Objection 15 to Paragraph 23 of the Declaration of Peter Hoffman.

13. AMAG did not credit the $392,779.75 against the AMAG Loan despite Mr. Hoffman's express imputation. PMH Dec. ¶15 & Ex. 7 (email exchange).

AMAG's Response: AMAG does not dispute that Peter Hoffman requested that the $392,779.75 amount of surplus proceeds paid to Palm Finance by Trustee Corp from the foreclosure of the Queens Road property be applied against the loan made by AMAG to Debtor and Susan Hoffman after Palm Finance notified Peter Hoffman that amount had been received and applied against the Autopsy Loan guaranteed by Peter Hoffman. AMAG Rule 56.1 Statement, ¶¶ 25 – 45.

14. Applying Peter's Credit to the loan balance, as of August 31, 2020, will reduce the balance by $607,352.08. Declaration of Patrick Gros ("Gros Dec.") ¶3 & Ex. 1 (AMAG calculation of loan balance).

AMAG's Response: Disputed. AMAG Rule 56.1 Statement, ¶¶ 25 – 45.

B. Simulated Sale. The SSUMF applicable to this issue are:

1. Mrs. Hoffman entered into the AMAG Loan to refinance her then first mortgage on her home at 900 Royal Street held by Whitney Bank as successor to Hancock Bank.

Declaration of Susan Hoffman ("SLH Dec.") ¶2 & Ex. 1 (Whitney/Hancock loan), Ex. 2 (AMAG Promissory Note and Loan Agreement), Ex. 3 (Whitney assignment to AMAG).

AMAG's Response: Disputed. AMAG Rule 56.1 Statement, ¶¶ 1 – 13.

2. AMAG insisted that Mrs. Hoffman acquire 36,250 shares of worthless preferred stock ("SAE Preferred Stock") of Seven Arts Entertainment Inc. ("SAE") ("Simulated Sale") at $10 per share. AMAG insisted on the purchase of the SAE Preferred Stock as a condition to the AMAG Loan. SLH Dec. ¶3 & Ex. 4 (Stock purchase agreement).

AMAG's Response: AMAG does not dispute that Mrs. Hoffman purchased 36,250 of SAE Preferred Stock pursuant to the Stock Purchase Agreement dated July 31, 2013, but denies that the stock was "worthless." AMAG Rule 56.1 Statement, ¶¶ 14-23; AMAG's Objections at p. 2, Objection 1 to Paragraph 4 of the Declaration of Susan Hoffman. Declaration of Robert Frcek No. 2, ¶¶ 5-8.

3. The SAE Preferred Stock was worthless when purportedly acquired by Mrs. Hoffman. SLD Dec. ¶4; PMH Dec. ¶¶16-17 & Ex. 8 (trading price of SAE common stock).

AMAG's Response: Disputed. AMAG's Objections, p. 12-13, Objections 8 and 9 to Paragraphs 16 and 17 to the Declaration of Peter Hoffman; AMAG Rule 56.1 Statement, ¶¶ 14-23; AMAG's Objections at p. 2, Objection 1 to Paragraph 4 of the Declaration of Susan Hoffman. Declaration of Robert Frcek No. 2, ¶¶ 5-8.

4. Steven Markoff who controlled by Palm and AMAG told Mrs. Hoffman that the SAE Preferred Stock was "now about worthless" when she acquired it. SLH Dec. ¶5 & Ex. 5 (email from Steve Markoff).

AMAG's Response: Disputed. AMAG's Objections at pp. 2-3, Objection 2. to Paragraph 5 of the Declaration of Susan Hoffman; AMAG Rule 56.1 Statement, ¶¶ 14-23.

5. Palm was not obligated pursuant to the Stock Purchase Agreement ¶3(b) to deliver, and did not deliver, the worthless SAE Preferred Stock to Mrs. Hoffman by delivery of a certificate and by marking on the records of SAE that the SAE Preferred Stock was transferred to Mrs. Hoffman. SLH Dec. ¶6 & Ex. 4; PMH Decl. ¶18 & Ex. 10 (SAE by-laws).

AMAG's Response: Disputed. AMAG's Objections at pp. 3-4, Objection 3. to Paragraph 6 of the Declaration of Susan Hoffman; AMAG's Objections at pp. 13-14, Objection 10. to Paragraph 18 of the Declaration of Peter Hoffman; AMAG Rule 56.1 Statement, ¶¶ 14-23; Declaration of Robert Frcek No. 2, ¶¶ 5-9, Exh. 1.

6. Mrs. Hoffman had no interest in acquiring the SAE Preferred Stock other than as a condition to disbursement of the AMAG Loan. SLH Dec. ¶7

AMAG's Response: Disputed. AMAG's Objections at p. 4, Objection 4. to Paragraph 7 of the Declaration of Susan Hoffman; AMAG Rule 56.1 Statement, ¶¶ 14-23

7. The Simulated Sale was additional consideration for the AMAG Loan and therefore the amount of the Simulated Sale constitutes additional interest due and payable pursuant to the AMAG Loan. SLH Dec. ¶8.

DEFENDANT AMAG, INC.'S RESPONSE TO DEBTOR'S SEPARATE
STATEMENT OF UNDISPUTED MATERIAL FACTS  - 7

07616.0191.13156843.1

AMAG's Response: Disputed. AMAG's Objections at p. 4, Objection 5. to Paragraph 8 of the Declaration of Susan Hoffman; AMAG Rule 56.1 Statement, ¶¶ 14-23.

8. Palm took delivery of the SAE Preferred Stock solely as a condition to the receipt of approximately $4,500,000 in cash from transfer of indebtedness of SAE unrelated to Mrs. Hoffman and as a result had no cash cost basis for the SAE Preferred Stock. PMH Decl. 1 19-20 & Ex. 10 (partially executed debt conversion contracts).

AMAG's Response: Disputed. AMAG's Objections at p. 11-12, Objections 11 and 12, to Paragraphs 11 and 12 of the Declaration of Peter Hoffman; AMAG Rule 56.1 Statement, ¶¶ 14-23.

9. The Simulated Sale's amount, the interest charged by AMAG on the Simulated Sale's amount and the interest on the face of the AMAG Loan, added together exceed the maximum rate of interest chargeable on loans made for commercial or business purposes pursuant to La. R.S. § 9-3509(B)(1)(b). Gros Dec. ¶ 3.

AMAG's Response: Disputed. Calls for a legal conclusion. AMAG Rule 56.1 Statement, ¶¶ 14-23.

10. Regardless of the excessive interest rate, AMAG's charging of interest on the Simulated Sale's amount alone is also usurious. Gros Dec. ¶ 6 & Ex. 1 (AMAG calculation of loan balance).

AMAG's Response: Disputed. Calls for a legal conclusion. AMAG Rule 56.1 Statement, ¶¶ 14-23.

11. Cancellation of the Simulated Sale will reduce the loan balance, as of August 31, 2020 by $833,504.73 Gros Dec. ¶4.

AMAG's Response: Disputed. Calls for a legal conclusion. AMAG Rule 56.1 Statement, ¶¶ 14-23.

C. Usurious Interest. The SSUMF applicable to this issue are:

1. The current balance of the AMAG Loan includes interest at a rate exceeding 12% per annum. Gros Dec. ¶2 & Ex. 1 (AMAG calculation of loan balance); SLH Dec. ¶9 & Ex. 6 (AMAG loan statement as of August 1, 2020).

AMAG's Response: AMAG does not dispute that the Loan Agreement and the Secured Promissory Note that is the subject of this lawsuit provides for a default interest rate of 18% per annum and that AMAG has maintained a Loan Schedule reflecting the default interest rate of 18% since the borrowers defaulted on the loan. Declaration of Robert Frcek, ¶¶36-37, Exh. 32.

2. Mrs. Hoffman's purpose and objective in requesting AMAG to advance the AMAG Loan was to refinance the mortgage on her home at 900-912 Royal St. in New Orleans and to remove a cloud on her title unrelated to any business of Mrs. Hoffman. SLH Decl. ¶10; PMH Dec. ¶21 & Ex. 11.

AMAG's Response: Disputed. AMAG Rule 56.1 Statement, ¶¶ 1-13. AMAG's Objections at p. 5, Objection 7 to Paragraph 10 of the Declaration of Susan Hoffman. AMAG's Objections at p. 15, Objection 13 to Paragraph 21 of the Declaration of Peter Hoffman.

DEFENDANT AMAG, INC.'S RESPONSE TO DEBTOR'S SEPARATE
STATEMENT OF UNDISPUTED MATERIAL FACTS - 9

07616.0191.13156843.1

3. Mrs. Hoffman did not intend to apply and did not apply any of the proceeds of the AMAG Loan to any active trade or business including her restaurant businesses or to any active business in the lease or sale of real property. SLH Dec. ¶11.

AMAG's Response: Disputed. AMAG Rule 56.1 Statement, ¶¶ 1-13. AMAG's Objections at p. 6, Objection 8. to Paragraph 11 of the Declaration of Susan Hoffman.

4. The value of Mrs. Hoffman's home at 900 Royal St. and condominium units used for personal purposes was more than 50% of the value of the real property pledged as collateral to AMAG as part of the AMAG Loan. SLH Dec. in 12-13 & Ex. 7& 8 (deal memo and appraisal of real property)

AMAG's Response: Disputed. AMAG Rule 56.1 Statement, ¶¶ 1-13. AMAG's Objections at p. 7, Objections 9 and 10, to Paragraphs 12 and 13 of the Declaration of Susan Hoffman.

5. The legal conclusion included in the AMAG Loan regarding the purported "business or commercial" purpose of the AMAG Loan did not represent the actual purpose of the AMAG Loan as communicated by Mrs. Hoffman to AMAG.

AMAG's Response: Disputed. Legal conclusion. AMAG Rule 56.1 Statement, ¶¶ 1-13

6. The balance of the AMAG Loan claimed on AMAG's last loan statement, as of August 1, 2020, is $5,237,998.32 reflecting prior payments by Debtor, acknowledged by AMAG, of $1,800,834.32 and without application of $392,779.75 (Peter's Credit). Gros Dec. ¶7 & Ex. 1 (AMAG calculation of loan balance); SLH Dec. ¶9 & Ex. 6 (AMAG loan statement).

AMAG's Response: AMAG agrees that its Loan Schedule shows a balance owed on the AMAG Loan in the amount of $5,237,998.32 as of July 31, 2020. AMAG Rule 56.1 Statement, ¶¶ 1-13

7. Cancellation and forfeiture of the usurious interest on the AMAG Loan reduces the loan balance by $3,791,794.36. Gros Dec. ¶8.

AMAG's Response: Disputed. Legal conclusion. AMAG Rule 56.1 Statement, ¶¶ 1-13.

Respectfully Submitted,

/s/John F. Kurtz, Jr.  _____
**JOHN F. KURTZ, JR. (*PRO HAC VICE*)**
Hawley Troxell Ennis & Hawley
877 W. Main Street, Suite 1000
Boise, ID 83702
Telephone: (208)344-6000
Email: jkurtz@hawleytroxell.com
Attorney for AMAG, Inc.

# CERTIFICATE OF SERVICE

      I certify that a copy of DEFENDANT AMAG, INC.'S RESPONSE TO DEBTOR'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS on 18th day of September, 2020, resulting in service via the Court's CM/ECF system as follows:

Leo D. Congeni on behalf of Plaintiff Royal Alice Properties, LLC
leo@congenilawfirm.com, michelle@congenilawfirm.com

Richard W. Martinez on behalf of Defendant AMAG, Inc.
Richard@rwmaplc.com, Claire@rwmaple.com

John F. Kurtz, Jr. on behalf of Defendant AMAG, Inc.
jkurtz@hawleytroxwell.com, lhanks@hawleytroxell.com


                                    */S/Richard W. Martinez*_____
                                    **RICHARD W. MARTINEZ**