UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. 19-12337 |
| ROYAL ALICE PROPERTIES, LLC | SECTION "A" |
| DEBTOR | CHAPTER 11 |

*************************************  *************************************

ROYAL ALICE PROPERTIES, LLC

      PLAINTIFF                         **ADV NO. 19-01133**

VERSUS

AMAG, INC.

      DEFENDANT

## OBJECTIONS AND MOTION TO STRIKE PARAGRAPHS OF THE DECLARATIONS OF SUSAN L. HOFFMAN AND PETER M. HOFFMAN FILED IN SUPPORT OF DEBTOR'S MOTION FOR SUMMARY ADJUDICATION

Pursuant to Federal Rule of Bankruptcy Procedure 7056(c)(2) Defendant AMAG, Inc., by and through its attorneys of record, objects to and moves to strike certain paragraphs contained the Declaration of Susan L. Hoffman and the Declaration of Peter M. Hoffman filed in support of Debtor Royal Alice Properties LLC's Motion for Summary Adjudication on the grounds that statements made in those paragraphs are not admissible in evidence.

Rule 56 requires that declarations filed in support of a motion for summary judgment contain facts that would be admissible in evidence.

OBJECTION AND MOTION TO STRIKE PARAGRAPHS OF
DECLARATIONS OF SUSAN HOFFMAN AND PETER HOFFMAN – 1

The statements contained in the designated portions of Paragraphs 4, 5, 6, 7, 8, 9, 10, 11, 12, 13 and 14 of the Declaration of Susan L. Hoffman are inadmissible as evidence and should be stricken from that declaration.

The statements contained in the designated portions of Paragraphs 2, 7, 8, 9, 11, 13, 14, 16, 17, 18, 19, 20, 21, 22, and 23 of the Declaration of Peter M. Hoffman are inadmissible as evidence and should be stricken from that declaration.

Defendant AMAG, Inc. moves to strike the following Paragraphs from the Declaration of Susan L. Hoffman, for the following reasons:

1. <u>Paragraph 4 states:</u> The SAE Preferred Stock was worthless when I was forced to acquire it.

    <u>Reasons for objection to Paragraph 4:</u> Relevance. Insufficient foundation. The conclusory statement fails to explain how Ms. Hoffman knew the value of the SAE Preferred Stock at the time of the purchase and fails to explain the basis of the statement, "I was forced to acquire it.." Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *E.g. TIG Ins. Co. v. Sedgwick James of Washington*, 276 F. 3d 754, 759 (5th Cir. 2002).

2. <u>Paragraph 5 states:</u> Steven Markoff, who controls both Palm and AMAG, warned me in an email dated July 28, 2012 that the SAE Preferred Stock was "now about worthless," a true correct and authentic copy of such email being attached hereto as Exhibit 5.

Reasons for objection to Paragraph 5: The statement made by Ms. Hoffman mischaracterizes the document. The email from Mr. Markoff to Ms. Hoffman stated: "An additional $366,000 that you will use through escrow to buy $366,000 of now almost worthless securities that we own, that Peter Hoffman told us some time ago that he would repurchase." The term "now about worthless" is not included in the email attached to Ms. Hoffman's Declaration as Exhibit 5. In addition, the email attached as Exhibit 5 is misleading because it does not include the entire email, which is included in Exhibit 28 of the Declaration of Robert Frcek, ¶ 16, Exh. 12. That email stream includes a statement from Peter Hoffman that he would be selling the Preferred Shares being purchased by Ms. Hoffman within the next three months in an email copied to Ms. Hoffman.

3. Paragraph 6 states: I did not receive a stock certificate in my name from SAE reflecting ownership of the SAE Preferred Stock.

Reasons for objection to Paragraph 6: Relevance. As explained in the Declaration of Robert Frcek No. 2, ¶ 6-9, Exh. 1 [AMAG002859], AMAG sent Notice to Company Pursuant to Section 2.11 of Investor's Rights Agreement signed by Dennis Lautzerheiser to Peter Hoffman, the Chief Executive Officer of Seven Arts Entertainment, Inc. ("SAE") advising SAE that Mr. Hoffman had purchased the Preferred Shares pursuant to the Stock Purchase Agreement. Thus, as discussed in AMAG's Memorandum in Opposition to Debtor's Motion for Summary Judgment, if Ms. Hoffman did not receive stock certificates that was because SAE did not send

4. <u>Paragraph 7 states:</u> I had no interest in acquiring the SAE Preferred Stock except as a means to avoid foreclosure by Whitney and to arrange the AMAG Loan. Peter Hoffman and I experienced financial difficulties due to unfair criminal charges threatened against us. Mr. Hoffman's business had ceased operation and was of no value to either of us.

    <u>Reasons for objection to Paragraph 7:</u> Relevance. Ms. Hoffman agreed to purchase the Preferred Shares pursuant to the Stock Purchase Agreement. Furthermore, reference to the criminal charges as being unfair is contradicted by the fact that Peter Hoffman's and her conviction was affirmed on appeal. *United States v. Hoffman* 901 F. 3d 523 (5th Cir. 2018)

5. <u>Paragraph 8 states:</u> I considered the acquisition of the SAE Preferred Stock as additional interest due under the AMAG Loan.

    <u>Reasons for objection to Paragraph 8:</u> Relevance. Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *E.g. TIG Ins. Co. v. Sedgwick James of Washington*, 276 F. 3d 754, 759 (5th Cir. 2002).

6. <u>Paragraph 9 states:</u> The most recent loan statement I received from AMAG shows a loan balance of $5,237,998.32, a true, correct, and authentic copy being attached hereto as Exhibit 6. That loan balance includes the amounts I was forced to pay for the SAE Preferred Stock and interest on that amount and the other advances at 18% per annum.

    <u>Reasons for objection to Paragraph 9:</u>  Relevance. Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.  *E.g. TIG Ins. Co. v. Sedgwick James of Washington*, 276 F. 3d 754, 759 (5th Cir. 2002).

7. <u>Paragraph 10 states:</u> I sought the AMAG Loan to avoid Whitney foreclosing on my residence at 900-12 Royal and to pay off a cloud on my title to 900-12 Royal created by a false lis pendens filed by Jonesfilm. That lis pendens did not arise from any business conducted by me, as confirmed in the Term Sheet dated May 16, 2016 ("Term Sheet") and an email from Mr. Hoffman to AMAG dated May 25, 2013, true, correct and authentic copies being attached hereto an Exhibit 7.

    <u>Reasons for objection to Paragraph 10:</u>  Relevance.  Any contention that the AMAG Loan was made for reasons other than exclusively for commercial and business purposes is barred by the Louisiana parol evidence rule.  The most important rule barring the use of testimonial proof is the parol evidence rule, which recognizes that parol (testimonial) evidence is not admissible to contradict, vary or modify a written instrument.  La.Civ.Code art. 1848; *Gulf States Finance Corp. v. Airline Auto Sales,*

*Inc.* 181 So. 2d 36 (La. 1965). The most common application of the parol evidence rule is where an agreement is reduced to a writing which is intended to reflect the complete agreement between the parties, which is usually evidenced by a clause in the agreement. *Johnson v. Orkin Exterminating Co, Inc.*, 746 F. Supp. 627 (E.D. La. 1990); *Kirsch v. Pier Orleans, Inc.* 363 So. 2d 1182 (La. Ct. App. 4th Cir. 1978). In such situations, the parol evidence rule bars testimonial proof that would contradict, vary or modify the terms of the writing. Louisiana courts have not allowed parol evidence that is "against or beyond" that which is in the written contract. *Placid Ref. Co. v. Privette*, 523 So. 2d 865, 867 (La. Ct. App. 1st Cir. 1988) (quoting *Land & Offshore Co. v. Martin*, 469 So. 2d 1177, 1181 (La. Ct. App. 3d Cir. 1985), *writ denied*, 524 So. 2d 748 (La. 1988). This rule is to protect the integrity of written agreements. *First Nat'l Bank v. Campo*, 537 So. 2d 268-271 (La. Ct. App. 4th Cir. 1988), *writ denied*, 538 So. 2d 578 (La. 1989)

8. <u>Paragraph 11 states:</u> I did not intend to apply and did not apply any of the proceeds of the AMAG Loan to any active trade or business conducted by me including my restaurant business or any active business in the sale or rental of real estate. All proceeds of the AMAG Loan were necessary to relieve my residence at 900-12 Royal from the threat of foreclosure and to remove a cloud on title not arising from any business conducted by me.

<u>Reasons for objection to Paragraph 11:</u> Relevance. Louisiana parol evidence rule. See discussion above regarding Paragraph 10.

9. <u>Paragraph 12 states:</u> The Whitney loan and the AMAG Loan are secured by mortgages on certain condominium units owned by Debtor located at 906 Royal St. and 910-12 Royal St. in New Orleans ("Condo Units"). At the time of making of the AMAG Loan, Units B and H of 910 Royal and Units D and E of 906 Royal were part of my residence and used by personal friends. As shown on the Term Sheet attached as Exhibit 7, the value of the Condo Units leased to third parties for commercial income and not used by me or my friends was less than 50% of the aggregate value of my home and the Condo Units.

    <u>Reasons for objection to Paragraph 12:</u> Relevance. Louisiana parol evidence rule. See discussion above regarding Paragraph 10.

10. <u>Paragraph 13 states:</u> In my opinion the value of my residence at 900-12 Royal was in truth and in fact substantially greater than the value of the Condo Units leased for rental income (Units A and C of 910-12 Royal) both to me and on any ultimate sale, as confirmed by the current value of my residence. A true, correct and authentic copy of the most current appraisal of my home and the Condo Units is attached hereto as Exhibit 8.

    <u>Reasons for objection to Paragraph 13:</u> Relevance. Louisiana parol evidence rule. See discussion above regarding Paragraph 10.

11. <u>Paragraph 14 states:</u> I executed the AMAG Loan and earlier term sheets that included conclusory representations that the AMAG was entered into for business or commercial purposes. I believed that language was legal boilerplate and paid no attention to it. I reviewed the provisions in the AMAG Loan regarding the application

OBJECTION AND MOTION TO STRIKE PARAGRAPHS OF
DECLARATIONS OF SUSAN HOFFMAN AND PETER HOFFMAN – 7

07616.0191.13152308.1

of its proceeds to acquisition of the Whitney mortgages, the removal of the Jonesfilm cloud on my titled and the purchase of the worthless SAE Preferred Stock. My purpose in making the AMAG Loan was solely to achieve those objectives and I did not then and do not now believe that these are business or commercial purposes.

<u>Reasons for objection to Paragraph 14:</u>  Relevance.  Louisiana parol evidence rule.  See discussion above regarding Paragraph 10.

Defendant AMAG, Inc. moves to strike the following Paragraphs from the Declaration of Peter M. Hoffman for the following reasons:

1. <u>Paragraph 2 states:</u>  I was indicted on February 6, 2014 and convicted after a jury trial in April of 2015 of Federal wire fraud charges that I consider a miscarriage of justice. During this period, I was the Chief Executive Officer and a shareholder of Seven Arts Entertainment Inc. ("SAE"), a public company then traded in the "pink sheets." As result of the charges and conviction, SAE was forced to cease operations and I suffered substantial financial reverses.

   <u>Reasons for objection to Paragraph 2:</u>  Relevance.  Reference to the criminal charges as being unfair is contradicted by the fact that Peter Hoffman's and her conviction was affirmed on appeal.  *United States v. Hoffman* 901 F. 3d 523 (5th Cir. 2018)

2. <u>Paragraph 7 states:</u>  No amounts were due on the A/NGD Debt on the date of the foreclosure sale.

<u>Reasons for objection to Paragraph 7</u>: Relevance. Palm Finance has never claimed the amounts are owed for loans made in 2003. Palm Finance was owed monies from the Autopsy Loan made in 2007 that was personally guaranteed by Peter Hoffman.

3. <u>Paragraph 8 states</u>: The 2003 DOT was never amended as filed in the Los Angeles County property records to apply to any other indebtedness held by Palm or AMAG to which I had executed a guarantee or was otherwise liable and no such amendment would have given Palm or AMAG priority over other deeds of trust or mortgages on Peter's Home.

    <u>Reasons for objection to Paragraph 8</u>: Inadmissible. Calls for a legal conclusion. Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *E.g. TIG Ins. Co. v. Sedgwick James of Washington*, 276 F. 3d 754, 759 (5th Cir. 2002).

4. <u>Paragraph 9 states</u>: On the date of the foreclosure sale, these deeds of trust encumbered Peter's Home in the following order of priority based on date of filing: (a) Chase DOT in an approximate amount of $1,100,000, (b) the 2003 DOT, (c) a "second" deed of trust in favor of WaMu for $500,000, (d) a judgment lien in favor of Jay Firestone for $350,000, and (e) a further deed of trust in favor of Palm securing other film indebtedness ("2016 DOT"). True correct and authentic copies of each of these give deeds of trust are attached as Items B through F to the RJN.

Reasons for objection to Paragraph 9: Mischaracterization of the evidence. Best evidence. Debtor has never produced a document showing a judgment lien in favor of Jay Firestone for $350,000.

5. Paragraph 11 states: I instructed the trustee under the Chase DOT to pay to Palm all proceeds in excess of the amounts due to Chase and warned Palm that the trustee required proof of its right to payment. Palm then provided to the trustee as the basis for payment the 2003 DOT and 2016 DOT. Only the 2003 DOT had priority and was sufficient for the trustee to make payment of the excess proceeds to Palm. Palm claimed to the trustee that the amounts owed pursuant to the 2016 DOT were due pursuant to the 2003 DOT even though by the 2003 DOT had never been amended to include security for the amounts secured by the 2016 DOT. True, correct and authentic copies of my warning to Palm and Palm's use of the 2003 DOT to obtain the excess proceeds from the foreclosure sale are attached hereto as Exhibit 5.

   Reasons for objection to Paragraph 11: No foundation as to how Peter Hoffman knows about what Palm Finance claimed to Trustee Corp, the company that conducted the foreclosure sale on the Queens Road property. Mischaracterization of the evidence. The communications between Palm Finance and Trustee Corp. are attached to the Declaration of Robert Frcek, ¶ 39, Exh. 34.

6. Paragraph 13 states: I entered into the Chase Settlement and instructed the trustee to pay funds to Palm pursuant to the 2003 DOT solely in payment on the AMAG Loan because the Guaranty was the most onerous obligation which I owed to AMAG or Palm. The AMAG Loan was secured by Mrs. Hoffman's home. My other guarantees

to Palm related to film loans which had been settled between Palm and SAE, and all film collateral had already been assigned to Palm in satisfaction of those loans pursuant to a Loan Workout Agreement dated August 31, 2014 ("Workout Agreement"), a true correct and authentic copy being attached hereto as Exhibit 7. <u>Reasons for objection to Paragraph 13</u>: Relevance. Mr. Hoffman's statements are directly contradicted by the record in this case showing that Mr. Hoffman was liable under his personal guaranty of the Autopsy Loan, which obligation was substantially more onerous than the guaranty of the AMAG loan to Royal Alice and Susan Hoffman. Best evidence. Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *E.g. TIG Ins. Co. v. Sedgwick James of Washington*, 276 F. 3d 754, 759 (5th Cir. 2002).

7. <u>Paragraph 14 states</u>: When an executive of Palm and AMAG stated that Palm would not apply Peter's Credit to the AMAG Loan, I wrote back: "Ouch!! This should be applied to Susan's loan" referring to the AMAG Loan. I stated to the principal of AMAG and Palm, Steven Markoff, in no less than four meetings with him in the period from on or about January of 2016 through October of 2016 that I was declining a home modification loan on Peter's Home and allowing it to be sold at foreclosure solely to pay down the AMAG Loan. A true, correct, and authentic copy of my email exchange with an executive of Palm and AMAG, Mr. Markoff is attached hereto as Exhibit 6 ("June Emails").

<u>Reasons for objection to Paragraph 14:</u> Relevance. Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *E.g. TIG Ins. Co. v. Sedgwick James of Washington*, 276 F. 3d 754, 759 (5th Cir. 2002).

8. <u>Paragraph 16 states:</u> As a condition to the AMAG Loan, AMAG insisted that Mrs. Hoffman acquire 36,625 shares of preferred stock of SAE ("SAE Preferred Stock"). The SAE Preferred Stock was worthless on July 31, 2013, the date of execution of the AMAG Loan. Attached as Exhibit 8 is a true, authentic and correct copy of a NASDAQ sales report on sales of SAE common stock in 2014 through 2019 showing that the trading price of SAE common stock, which quickly declined to a nil price. The SAE Preferred Stock was worthless because it could not be publicly traded even at the rapidly declining price of SAE common.

<u>Reasons for objection to Paragraph 16:</u> Relevance. The shares of stock in Exhibit are common shares of stock of SAE, not SAE Preferred Shares. Mischaracterization of the evidence. Exhibit 8 does not show that the price for SAE common stock on July 31, 2013 was zero.

9. <u>Paragraph 17 states:</u> On or about the execution of the AMAG Loan and to attempt to remedy Mrs. Hoffman's acquisition of the worthless SAE Preferred Stock, I stated to Mrs. Hoffman that I believed that investment bankers trading SAE common stock would acquire the SAE Preferred if SAE agreed to a drastically lower exchange price for conversion in SAE common stock, which the banks would then sell on the public

OBJECTION AND MOTION TO STRIKE PARAGRAPHS OF
DECLARATIONS OF SUSAN HOFFMAN AND PETER HOFFMAN – 12

07616.0191.13152308.1

market. The SAE Preferred Stock was worthless. The only possible recovery would be such a modification of the conversion rate. However, the then pending criminal investigation against me prevented any such acquisition in the months after closing of the AMAG Loan. The investment bankers declined to acquire the SAE Preferred Stock because the SAE common stock was then worthless and could not be traded in any material volume on the public markets.

<u>Reasons for objection to Paragraph 17:</u>   Hearsay.  Relevance.  Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *E.g. TIG Ins. Co. v. Sedgwick James of Washington*, 276 F. 3d 754, 759 (5th Cir. 2002).

10. <u>Paragraph 18 states:</u>   Palm failed to deliver the SAE Preferred Stock to Mrs. Hoffman because Palm did not surrender the certificate to SAE for cancellation and SAE did not issue a new certificate to Mrs. Hoffman as required by SAE's By-Laws, true, correct and authentic copies being attached hereto as Exhibit 9, and as required by NEVADA REV. STAT. §§78.235, 78.240. Pursuant to Article II Section 2.04 and Article VI of the By-Laws adopted in accordance with Sections 78.235 and 78.240, no preferred stock would be issued to Mrs. Hoffman absent execution of a certificate by two officers of SAE and no such certificate was ever prepared or executed by any officer of SAE. The investment bankers who had indicated a desire to acquire the SAE Preferred Stock would not proceed without a validly issued certificate for the SAE Preferred Stock.

<u>Reasons for objection to Paragraph 18:</u> Mischaracterization of the evidence. As explained in the Declaration of Robert Frcek No. 2, ¶ 6-9, Exh. 1 [AMAG002859], AMAG sent Notice to Company Pursuant to Section 2.11 of Investor's Rights Agreement signed by Dennis Lautzerheiser to Peter Hoffman, the Chief Executive Officer of Seven Arts Entertainment, Inc. ("SAE") advising SAE that Mr. Hoffman had purchased the Preferred Shares pursuant to the Stock Purchase Agreement. Thus, as discussed in AMAG's Memorandum in Opposition to Debtor's Motion for Summary Judgment, if Ms. Hoffman did not receive stock certificates that was because SAE did not send such a certificate to Ms. Hoffman after being advised by AMAG of the sale of those shares pursuant to the Stock Purchase Agreement.

11. <u>Paragraph 19 states:</u> Palm had no cash cost basis for its acquisition of the SAE Preferred Stock. Palm was required to purchase the SAE Preferred Stock as a condition to receipt of approximately $4,500,000 of funds used to reduce film indebtedness of SAE and its affiliates. Despite Debtor's Request For Production of the agreements under which Palm acquired the SAE Preferred Stock and its sale of SAE indebtedness in return for approximately $4,500,000 proceeds, and despite AMAG counsel's statement in open court that it would produce over 1,000 pages of such documents, AMAG has failed to produce any of these documents.

<u>Reasons for objection to Paragraph 19:</u> Relevance. Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue

for trial. *E.g. TIG Ins. Co. v. Sedgwick James of Washington*, 276 F. 3d 754, 759 (5th Cir. 2002).

12. <u>Paragraph 20 states:</u> I was able to locate two partially executed contracts for the sale of SAE's indebtedness to Palm, to be converted into SAE common stock and sold on NASDAQ by the purchaser, under which Palm received $1,750,000 of the approximately $4,500,000 ultimately received by it. True, correct and authentic copies of such partially executed contracts are attached as Exhibit 10.

    <u>Reasons for objection to Paragraph 20:</u> Relevance. Exhibit 10 relates to a transaction with Seven Arts Pictures, PLC. Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *E.g. TIG Ins. Co. v. Sedgwick James of Washington*, 276 F. 3d 754, 759 (5th Cir. 2002).

13. <u>Paragraph 21 states:</u> Mrs. Hoffman entered into the AMAG Loan because (a) Whitney Bank was threatening to foreclose on her home and (b) Jonesfilm, had improperly recorded a lis pendens on Mrs. Hoffman's home which created a cloud on title that need to be removed before any refinancing of Mrs. Hoffman's mortgage could occur, as explained in correspondence with AMAG, true, correct and authentic copies being attached hereto as Exhibit 11. Mrs. Hoffman believes her situation was dire and the AMAG Loan was critically needed to resolve these two issues.

    <u>Reasons for objection to Paragraph 21</u>: Hearsay. Speculation. Mr. Hoffman is not allowed to testify about the reason why Ms. Hoffman may or may not have taken certain actions.

14. <u>Paragraph 22 states:</u>  The Jonesfilm judgments improperly recorded as lis pendes on Debtor's real property resulted from my film business (production of the motion picture "9&1/2 Weeks II." Mrs. Hoffman had no involvement in the production of that picture or any of the litigation that arose in connection with it.

    <u>Reasons for objection to Paragraph 22:</u>  Relevance.  Relevance.  Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.  *E.g. TIG Ins. Co. v. Sedgwick James of Washington*, 276 F. 3d 754, 759 (5th Cir. 2002).

15. <u>Paragraph 23 states:</u>  I have engaged in numerous negotiations and lending agreements with AMAG and Palm since early 2003. At all time, Mr. Markoff stated to me that he was the sole owner and director of both AMAG and Palm which operated out of his office in Los Angeles. I considered AMAG, Palm and other companies controlled by Mr. Markoff as a single business enterprise with no difference between or among them for purposes of my dealings with both AMAG and Palm.

    <u>Reasons for objection to Paragraph 23:</u>  No foundation.  Relevance.  Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.  *E.g. TIG Ins. Co. v. Sedgwick James of Washington*, 276 F. 3d 754, 759 (5th Cir. 2002).

DATED THIS 18th day of September, 2020.

/s/ John F. Kurtz, Jr._____
**John F. Kurtz, Jr. (Admitted *Pro Hac Vice*)**
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 Main Street, Suite 1000
P.O. Box 1617
Boise, ID 83701-1617
Telephone: 208.344.6000
Facsimile: 208.954.5232
Email: jkurtz@hawleytroxell.com
Attorney for AMAG, Inc.

CERTIFICATE OF SERVICE

       I certify that a copy of OBJECTION AND MOTION TO STRIKE PARAGRAPHS OF DECLARATIONS OF SUSAN HOFFMAN AND PETER HOFFMAN on 18th day of September, 2020, resulting in service via the Court's CM/ECF system as follows:

Leo D. Congeni on behalf of Plaintiff Royal Alice Properties, LLC
leo@congenilawfirm.com, michelle@congenilawfirm.com

Richard W. Martinez on behalf of Defendant AMAG, Inc.
Richard@rwmaplc.com, Claire@rwmaple.com

John F. Kurtz, Jr. on behalf of Defendant AMAG, Inc.
jkurtz@hawleytroxwell.com, lhanks@hawleytroxell.com


                                       */S/Richard W. Martinez*____
                                       **RICHARD W. MARTINEZ**