UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | * | CASE NO.: 19-12337 |
| | * | |
| ROYAL ALICE PROPERTIES, LLC | * | SECTION "A" |
| | * | |
| Debtor | * | CHAPTER 11 |
| | * | |

*************************************

| | | |
|---|---|---|
| | * | |
| ROYAL ALICE PROPERTIES, LLC | * | |
| | * | ADVERSARY NO. 19-01133 |
| Plaintiffs, | * | |
| | * | |
| vs. | * | |
| | * | |
| AMAG INC., | * | |
| | * | |

*************************************

**RESPONSE OF DEBTOR ROYAL ALICE PROPERTIES LLC TO DEFENDANT AMAG, INC. RULE 56.1 STATEMENT OF MATERIAL FACTS AS TO WHICH THERE DOES NOT EXIST A GENUINE ISSUE TO BE TRIED**

Debtor Royal Alice Properties LLC ("Debtor") hereby responds, objects to and disputes Defendant AMAG's Rule 56.1 Statement Of Material Facts As To Which There Does Not Exist A Genuine Issue To Be Tried:

1.     On July 31, 2013, AMAG, as "Lender," and Susan H. Hoffman, an individual, and Royal Alice Properties, LLC, a Louisiana limited liability company, as "Borrowers," entered into a Loan Agreement, a true and correct

copy of which is attached to the Declaration of Robert Frcek as Exhibit 1. Declaration of Robert Frcek, *("Frcek Dec.")* ¶5, Ex. 1.

> <u>Debtor Response</u>:  Undisputed.

2.     The last sentence of Paragraph 1 of the Loan Agreement expressly provides:

> Borrowers warrant and represent that the Loan will be used exclusively for business and commercial purposes and is not being used for personal or household purpose.

Paragraph 1 also provides a detailed description as to how the loan proceeds were to be used, which were all represented to be business and commercial purposes, providing as follows:

> 1.     LOAN: Lender has acquired the outstanding balance of loans owed by Susan H. Hoffman and Peter Hoffman to Whitney Bank, the successor-in-interest to Hancock Bank of Louisiana, and Lender has been induced by Borrowers to (i) amend the terms of such existing loans and (ii) to make additional loans to Borrower all as described hereunder, in an aggregate amount not to exceed the principal amount of $3,166,000.00 (the **"Loan"**) to Borrowers, with such additional lending to be exclusively for the following purposes: (i) providing funds for Susan H. Hoffman to purchase 36,625 shares of Series A Convertible Exchangeable Preferred Stock of Seven Arts Entertainment, Inc. **("Stock Purchase"),** and all other costs, expenses and fees required pursuant to this Agreement (collectively the **"Initial Advance").** Lender has also agreed to provide additional advances, subject to the conditions set forth in this Agreement, to allow the Borrowers to obtain the removal of all liens, encumbrances, notices of lis pendens, judgments, orders and adverse filings, if any, currently being pursued by Jonesfilm against the property owned by Borrowers in the

state of Louisiana and to provide funds to pay attorney fees, cost and other expenses to pursue certain litigation currently pending in England (**"Content Litigation"),** which additional advances are referred to in this Agreement as **"Additional Advances".** Borrowers warrant and represent that the Loan will be used exclusively for business and commercial purposes and is not being used for personal or household purposes.

Debtor Response: Undisputed but conclusory statements in last sentence are immaterial for reasons set forth in Debtor's Motion For Summary Adjudication ("Debtor MSA") [ECF No. 59] at 13, 20, 23.

3.      On July 31, 2013, AMAG, as Payee, and Susan H. Hoffman, an individual, and Royal Alice Properties, LLC, a Louisiana limited liability company were the "Makers," entered into a Secured Promissory Note, a true and correct copy of which is attached to the Declaration of Robert Frcek as Exhibit 2. *Frcek Dec.*¶6, Ex. 2.

Debtor Response: Undisputed.

4.      On July 31, 2013, Whitney Bank, as the successor-in-interest to Hancock Bank of Louisiana, and AMAG, "Sale and Transfer of Notes and Security Therefor Without Recourse", a true and correct copy of which is attached to the Declaration of Robert Frcek as Exhibit 3. *Frcek Dec.* ¶7, Ex. 3.

Debtor Response: Undisputed.

5.     As stated in described Paragraph 1 of the Loan Agreement, on July 31, 2013, AMAG entered into an agreement entitled "Sale and Transfer of Notes and Security Therefor Without Recourse," with Whitney Bank, as the successor-in-interest to Hancock Bank of Louisiana, pursuant to which Whitney Bank transferred all of its interests in a loan originally made to Peter Hoffman and Susan Hoffman by Hancock Bank of Louisiana evidenced by a Promissory Note dated April 3, 2007, for $2,300,000.00 and a Promissory Note dated April 26, 2012, for $649,863.19 and other agreements associated with those loans in exchange for a payment of $1,860,901.60, which was the balance owed to Whitney Bank. *Frcek Dec.* ¶7, Ex. 3. Both of those Promissory Notes expressly provide in relevant part:

> "APPLICABLE LENDING LAW. To the extent not preempted by federal law, this business or commercial loan is being made under the terms and provisions of La. **R.S.** 9:3509, et. seq."

*Frcek Dec.*¶7, Ex. 3 at AMAG000012 and AMAG0000l 7.

Debtor Response:  Undisputed but conclusory statements in the last quoted paragraph from the Promissory Notes are immaterial for reasons stated in Debtor MSA at 13, 20, 23.

6.     On July 29, 2013, Peter Hoffman entered in to a Continuing Personal Guaranty (Peter M. Hoffman), in which he agreed to guaranty the loan

made to Susan Hoffman and Royal Alice, a true and correct copy of which is attached to the Declaration of Robert Frcek as Exhibit 4, *Frcek Dec.* ¶8, Ex. 4.

    <u>Debtor Response</u>: Undisputed.

7.    On July 31, 2013, the Sale and Transfer of Notes and Security Therefor Without Recourse was recorded New Orleans Parish, a true and correct copy showing the recordation information is attached to the Declaration of Robert Frcek as Exhibit 5. *Frcek Dec.* ¶ 9, Ex. 5.

    <u>Debtor Response</u>: Undisputed.

8.    On July 31, 2013, the Sale and Transfer of Notes and Security Therefor Without Recourse was recorded New Orleans Parish, a true and correct copy showing the recordation information is attached to the Declaration of Robert Frcek as Exhibit 5. *Frcek Dec.* ¶ 9, Ex. 5.

    <u>Debtor Response</u>: Undisputed.

9.    On May 9-10, 2013 emails were sent between Steven Markoff, Peter Hoffman, and Susan Hoffman, true and correct copies of which are attached to the Declaration of Robert Frcek as Exhibit 7. *Frcek Dec.* ¶11, Ex. 7.

    <u>Debtor Response</u>: Undisputed that emails were sent but objection to content as hearsay.

10.    On May 16, 2013, Peter Hoffman and Susan Hoffman signed a Memorandum, a true and correct copy of which is attached to the Declaration of

Robert Frcek as Exhibit 8. *Frcek Dec.* ¶12, Ex. 8. Paragraph 4. N. of that Memorandum provides:

> N. Use of Loan Proceeds. Borrower represents that no loan proceeds will be used for personal purposes and warrants that 100% of the loan proceeds will be used solely for commercial purposes as follows: Approximately $1.7M to pay off existing bank loans with Whitney Bank (formerly Hancock Bank) for loans secured by the properties used as security on this loan as described in 3.A. to 3.C. above (which show mortgage balances at 12/31/12 on Susan Hoffman's personal financial statement totaling $1,767,743), to pay lender's loan fee, legal expenses, and property inspection expenses, to purchase $366,250 in Seven Arts Preferred stock held by Lender, and to use the remaining loan proceeds to settle the JonesFilm litigation judgement of $246,000 plus interest, which is expected to settle for $250,000 to $350,000.

Debtor Response: Undisputed that Memorandum was executed but conclusory statements regarding the purpose of the loan are immaterial for reasons stated in Debtor's MSA at 13, 20, 23.

11. Representations that the loan was for commercial purposes were also made by Peter Hoffman and Susan Hoffman in other correspondence. Steven C. Markoff sent an email to Peter Hoffman on May 9, 2013, stating in relevant part: "100% of the loan proceeds must be used for commercial [not personal] purposes." In response to that email, Peter Hoffman sent an email on May 10, 2013, to Mr. Markoff, with a copy to Susan Hoffman, stating in relevant part:

"The proceeds are being used to repay the existing mortgage, costs of this loan and a reserve for Jonesfilm. I believe these are commercial purposes within your intent."

*Frcek Dec.* ¶ 11, Ex. 7.

Debtor Response:  Undisputed that emails were sent but conclusory statements regarding purpose of the loan are immaterial for reasons set forth in Debtor's MSA at 13, 20, 23.

12.   Representatives of AMAG were never told that the loan proceeds would be used for any purpose other than a commercial purpose and had no reason to believe otherwise. Declaration of Steven Markoff *("Markoff Dec.")* ¶8.

Debtor Response:  Disputed.  See Debtor's Separate Statement Of Undisputed Material Facts ("SSUMF") C2-5 [ECF No. 57] and evidence cited therein.

13.   A true and correct copy of the Summary of Loan Terms Spreadsheet for the AMAG Loan made to Susan Hoffman and Royal Alice on July 31, 2013 showing the original interest rate charged and the default interest charged by AMAG pursuant to the Loan Agreement is attached to the Declaration of Robert Frcek as Exhibit 9.  The interest rate charged prior to default was 10% per annum and the default interest rate charged is 18% per annum.  *Frcek Dec.* ¶13, Ex. 9.

Debtor Response:  Disputed.  See Debtor's SSUMF B7, 9-11 and evidence therein cited.

14.     On July 31, 2013 a Stock Purchase Agreement was entered into between AMAG and Susan Hoffman, a true and correct copy of which is attached to the Declaration of Robert Frcek as Exhibit 10. *Frcek Dec.* ¶14**,** Ex. 10.

Debtor Response:   Undisputed that document was executed but disputed that it is anything but a simulation for charging of usurious interest. See SSUMF B1-11 and evidence therein cited.

15.     In Paragraphs 5 (g), (h), (i) (j) and (k) of the Stock Purchase Agreement, Susan Hoffman represented and warranted, as the "Buyer," as follows:

(g)     Buyer has reviewed and understands the Certificate and the Investor Rights Agreement. Buyer has reviewed Company's filings with the United States Securities and Exchange Commission and has conducted such due diligence and made such inquiry of the Company and her representatives as she has deemed necessary and has been furnished all materials relating to Company, its business and financial condition, the Shares, and any other matters which she has requested and has been afforded by the Company the opportunity to ask questions and receive answers concerning the Company and the Shares; and the Company has answered all inquiries that Buyer has made of it concerning Company, its business and financial condition, or any other matter relating to the operation of Company and the rights, privileges, limitations and value of the Shares.

(h)     Buyer recognizes that an investment in the Shares involves significant risks. Buyer has not received, and is not relying on, any information received from Seller relating to

the Company, its business, financial condition, results of operations or other information pertinent to the valuation of the Shares.

(i)    Buyer is not relying on Seller with respect to the legal, tax, economic and related considerations of an investment in the Shares but has relied on the advice of, or has consulted with, only her own legal, tax and other advisors.

(G) Buyer has participated in pre-existing business relationships between the Company and Seller and has such knowledge and experience in business and financial matters as to enable her to utilize the information made available to her by the Company, to protect her own interests, to evaluate the merits and risks of her investment in the Shares, and to make an informed investment decision with respect thereto.

(k)    Buyer (i) has adequate means of providing for her current needs and possible personal contingencies, (ii) has no need for liquidity in her investment in the Shares, (iii) is able to bear the economic risks of her investment in the Shares, and (iv) at the present time, can afford a complete loss of such investment.

*Frcek Dec.* ¶14, Ex. 10.

Debtor Response:  Undisputed but immaterial.

16.    On July 26, 2013, Peter Hoffman, Susan Hoffman and representatives of AMAG exchanged emails, true and correct copies of which are attached to the Declaration of Robert Frcek as Exhibit 11. *Frcek Dec.*¶15, Ex. 11.

Debtor Response:  Undisputed that emails were sent but objection to contents as hearsay.

17.    On July 28-29, 2013, Peter Hoffman, Susan Hoffman and representatives of AMAG exchanged emails, true and correct copies of which are attached to the Declaration of Robert Frcek as Exhibit 12. *Frcek Dec.*¶16, Ex. 12.

Debtor Response:  Undisputed that emails were sent but objection to contents as hearsay.

18.    During the period from July 26 through July 28, 2013, emails were exchanged between Susan Hoffman, Peter Hoffman and representatives of AMAG concerning the loan and the acquisition of the SAE Preferred Shares. In those emails, Steven Markoff indicated that the shares could be almost worthless. However, both Peter Hoffman and Susan Hoffman expressed that Susan would be able to sell those shares for an amount that would allow her to repay the portion of the loan used to fund the purchase of the SAE Preferred Shares within the three months. *Frcek Dec.* ¶¶15 & 16, Ex. 11 & 12; *Markoff Dec.,* ¶¶15 & 16, Ex. 7 & 8.

Debtor Response:  Undisputed that statements were made but disputed that shares of common stock of Seven Arts Entertainment Inc. ("SAE") were in fact saleable at any price on or about July 31 through February 6, 2014. Declaration of Peter Hoffman ¶16; Supplemental Declaration of Peter Hoffman ¶¶6-8.

19.     On July 26, 2013, five days before Susan Hoffman signed the Stock Purchase Agreement, emails were exchanged between AMAG, Susan Hoffman and Peter Hoffman regarding the ability of the borrowers to repay the loan. *Frcek Dec.* ¶15, Exh. 11. In one of the those emails, Peter Hoffman addressed Susan Hoffman's ability to repay the loan by indicating that she would be able to sell the preferred stock to be purchased by selling those shares to other investors of SAE stock, stating:

> The Seven Arts stock purchase will be funded by Seven Arts Investors within the next three months including interest.

*Frcek Dec.* ¶15, Ex. 11 at 1.

Debtor Response:  Undisputed that email was sent but disputed as set forth in Response 18 above.

20.     On July 28, 2013, Mr. Markoff sent an email to Susan Hoffman and Peter Hoffman describing some of the risks of the loan. Susan Hoffman responded that she would go through with the purchase stating: "About the $366,000 of securities buy-back. Seth and Neil are committed to buying/selling these securities." *Markoff Dec.* ¶16, Ex. 8.

Debtor Response:  Undisputed.

21.     On October 17, 2011, Palm Finance entered into a Subscription Agreement for Series A Convertible Exchangeable Preferred Stock of Seven Arts Entertainment Inc. ("SAE Preferred Shares"), a true and correct copy of

which is attached to the Declaration of Robert Frcek as Exhibit 13. *Frcek Dec.*
¶17, Ex. 13.

> Debtor Response:  Undisputed but immaterial.

22.    On October 26, 2011, Palm received a letter from Lionel Sawyer &
Collins, the attorneys for Seven Arts Entertainment, Inc. regarding the SAE
Preferred Shares, which contained an attachment showing that the SAE Preferred
Shares would have a Liquidation Preference, a true and correct copy of which is
attached to the Declaration of Robert Frcek as Exhibit 14 at p. AMAG001193. *Frcek
Dec.* ¶18, Ex. 14.

> Debtor Response:  Undisputed but immaterial.

23.    On November 1, 2011, Palm Finance transferred the SAE Preferred
Shares to AMAG pursuant to a Bill of Sale and Assignment, a true and correct copy
of which is attached to the Declaration of Robert Frcek as Exhibit 15. *Frcek Dec.*
¶19, Ex. 15.

> Debtor Response:  Undisputed but immaterial.

24.    On November 2, 2011, AMAG received a Shareholder Statement
for the SAE Preferred Shares from Interwest Transfer company showing its
ownership of 125,125 SAE Preferred Shares, a true and correct copy of which is
attached to the Declaration of Robert Frcek as Exhibit 16. *Frcek Dec.* ¶ 20, Ex.
16.

Debtor Response:  Undisputed but immaterial.

25.    On March 31, 2003, Palm Finance, as "Lender," and Seven Arts Pictures, Inc., a Nevada corporation, and Seven Arts Pictures Limited, an entity formed in the United Kingdom entered into a Loan Agreement, a true and correct copy of which is attached to the Declaration of Robert Frcek as Exhibit 17. *Frcek Dec.* ¶21, Ex. 17.

Debtor Response:  Undisputed but immaterial.

26.    On March 31, 2003, Peter Hoffman and Susan Hoffman signed a Continuing Personal Guaranty, a true and correct copy of which is attached to the Declaration of Robert Frcek as Exhibit 18. *Frcek Dec.* ¶22, Ex. 18.

Debtor Response:  Undisputed but immaterial.

27.    On July 18, 2003, Palm Finance, as "Lender," and Seven Arts Pictures, Inc., a Nevada corporation, and Seven Arts Pictures Limited, an entity formed in the United Kingdom, and Asylum Productions Limited, a California corporation entered into a Loan Agreement dated, a true and correct copy of which is attached to the Declaration of Robert Frcek as Exhibit 19.  *Frcek Dec.* ¶23, Ex. 19.

Debtor Response:  Undisputed but immaterial.

28.     On July 22, 2003, Peter Hoffman and Susan Hoffman signed a Continuing Personal Guaranty, a true and correct copy of which is attached to the Declaration of Robert Frcek as Exhibit 20. *Frcek Dec.*¶24, Ex. 20.

Debtor Response:  Undisputed but immaterial.

29.     On September 30, 2003, Peter Hoffman and Susan Hoffman signed a Loan Modification Agreement, a true and correct copy of which is attached to the Declaration of Robert Frcek as Exhibit 21. *Frcek Dec.*¶25, Ex. 21.

Debtor Response:  Undisputed but immaterial.

30.     On November 19, 2003, Peter Hoffman and Susan Hoffman granted a Deed of Trust encumbering real property located at 1643 Queens Road, Los Angeles County, California recorded in Los Angeles County, California to First American Title Company for the benefit of Palm Finance, a true and correct copy of which is attached to the Declaration of Robert Frcek as Exhibit 22 ("Queens Road DOT"). *Frcek Dec.* ¶26, Ex. 22.

Debtor Response:  Undisputed.

31.     On October 31, 2005, Peter Hoffman and Susan Hoffman signed the Second Loan Modification Agreement, a true and correct copy of which is attached to the Declaration of Robert Frcek as Exhibit 23. *Frcek Dec.* 27, Ex. 23.

Debtor Response:  Undisputed but immaterial.

32.     On February 9, 2006, Palm Finance and Peter Hoffman and Susan Hoffman entered into the Agreement, a true and correct copy of which is attached to the Declaration of Robert Frcek as Exhibit 24. *Frcek Dec.*¶28, Ex. 24.

Debtor Response:  Undisputed but immaterial.

33.     On February 15, 2006, Palm Finance, as "Assignor", and Arrowhead Target Fund, Ltd., a British Virgin Islands limited company, entered into an Assignment of Loan Documents, a true and correct copy of which is attached to the Declaration of Robert Frcek as Exhibit 25. *Frcek Dec.*¶29, Ex. 25.

Debtor Response:  Undisputed but immaterial.

34.     On February 15, 2006, Palm entered into an Assignment of Loan Documents agreement with Arrowhead Target Fund, Ltd. to transfer a portion of the balances owed for Movie Loan No. 1 and Movie Loan No. 2 in addition to many of the loan documents associated with those loans. *Frcek Dec.*¶29, Ex. 25. However, the Queens Road DOT was not included in the transfer. To the contrary, Peter Hoffman and Susan Hoffman signed a Secured Promissory Note payable to AMAG on February 15, 2006, for the amount of $601,347.60, which expressly identified the Queens Road DOT as security for that promissory note. *Frcek Dec.*¶30, Ex. 26, Section 8.

Debtor Response:  Undisputed but immaterial.

35.    On May 7, 2007, Palm Finance, as "Lender," and New Moon Pictures, LLC, a Louisiana limited liability company, Pool Boy the Movie, LLC, a Louisiana limited liability company, and Autopsy, LLC, a Louisiana limited lability company ("Autopsy Loan") entered in to a Loan Agreement, a true and correct copy of which is attached to the Declaration of Robert Frcek as Exhibit 27. *Frcek Dec.*¶31, Ex. 27.

Debtor Response:  Undisputed.

36.    On January 8, 2009, Peter Hoffman signed a Continuing Personal Guaranty guarantying the repayment of the Autopsy Loan, a true and correct copy of which is attached to the Declaration of Robert Frcek as Exhibit 28. *Frcek Dec.* ¶32, Ex. 28.

Debtor Response:  Undisputed.

37.    On November 24, 2010, Peter Hoffman signed the Forbearance and Workout Agreement #5, a true and correct copy of which is attached to the Declaration of Robert Frcek as Exhibit 29. *Frcek Dec.* ¶33, Ex. 29. Section 2 z) of that agreement expressly provided that one of the "Conditions to Forbearance" was as follows:

> The Deed of Trust, recorded in Los Angeles County, California on December 18, 2003 as Instrument No. 03 3736332, encumbering the real property located at 1643 Queens Road, Los Angeles, California ("Queens Road Property") shall remain in full force and effect and shall be security for the Hoffman Guaranty and all other guaranties

from Hoffman regarding amounts owed to Lender ("Hoffman Guaranties"). In the event, that Deed of Trust has been reconveyed or otherwise is no longer an encumbrance against the Queens Road Property, Hoffman agrees to execute another Deed of Trust on Queens Road Property to secure payment of the Hoffman Guaranties in a form of Deed of Trust acceptable to Lender and to make any modifications or amendments to the Deed of Trust reasonably requested by Lender to perfect the Deed of Trust in favor of Lender.

Debtor Response:  Undisputed but immaterial.

38.    On October 28, 2011, Peter Hoffman signed a Forbearance and Workout Agreement #6, a true and correct copy of which is attached to the Declaration of Robert Frcek as Exhibit 30. *Frcek Dec.*¶34, Ex. 30. Section 3 x) of that agreement expressly provided that one of the "Conditions to Forbearance" was as follows:

The Deed of Trust, recorded in Los Angeles County, California on December 18, 2003 as Instrument No. 03 3736332, encumbering the real property located at 1643 Queens Road, Los Angeles, California ("Queens Road Property") shall remain in full force and effect and shall be security for the Hoffman Guaranty and all other guaranties from Hoffman regarding amounts owed to Lender ("Hoffman Guaranties"). In the event, that Deed of Trust has been reconveyed or otherwise is no longer an encumbrance against the Queens Road Property, Hoffman agrees to execute another Deed of Trust on Queens Road Property to secure payment of the Hoffman Guaranties in a form of Deed of Trust acceptable to Lender and to make any modifications or amendments to the Deed of Trust reasonably requested by Lender to perfect the Deed of Trust in favor of Lender.

Debtor Response:  Undisputed but immaterial.

39.     On or about August 1, 2016, Peter Miles Hoffman and Susan Lee Hoffman executed a second Deed of Trust encumbering the Queens Road Property ("Second DOT"). The Second DOT was recorded on August 12, 2016, in Los Angeles County, California as Instrument No. 20160960925. *Frcek Dec.* ¶35, Ex. 31.

Debtor Response:  Undisputed.

40.     A Loan Schedule for the Autopsy Loan is attached to the Declaration of Robert Frcek as Exhibit 32. *Frcek Dec.* ¶36, Ex. 32.

Debtor Response:  Disputed. See PMH Supp Dec ¶¶2-5.

41.     The Loan Schedule for the Autopsy Loan is an Excel spreadsheet maintained by Palm Finance to show all amounts loaned, all payments received, and all interest paid and accrued for the Autopsy Loan. The Loan Schedule accurately accounts for the Autopsy Loan. The Loan Schedule shows that Palm Finance received more than $2.0 million in loan payments during the four year period prior to June 1, 2017, which was the date Palm Finance applied the surplus proceeds from the foreclosure of the Queens Road Property in the amount of $392,779.74 as a payment against the Autopsy Loan. The Loan Schedule also accurately shows that Palm Finance received a payment of $245,124 on March 26, 2014 that was applied against the Autopsy Loan. *Frcek Dec.*¶37, Ex. 32.

Debtor Response:  Disputed. See PMH Supp Dec ¶¶2-5.

42.     On February 25, 2014, emails were exchanged between Peter Hoffman, Robert Frcek, Steven Markoff, and other AMAG representatives, first advising Peter Hoffman that Palm Finance had received two wires totaling $654,905 on January 10, 2014 and January 30, 2014 of which the amount of $436,695 was applied as a payment against the Autopsy Loan. The February 25, 2014 email sent in response by Peter Hoffman provides: "Thank you for this information." Peter Hoffman never communicated to Palm Finance that those payments were not properly applied to the Autopsy Loan. True and correct copies of those emails are attached to the Declaration of Robert Frcek as Exhibit 33. *Frcek Dec.* ¶38, Ex. 33.

    Debtor Response:  Undisputed but immaterial.

43.     On January 6, 2017, Peter Hoffman sent an email to Steven Markoff stating as follows:

> I am told that the trustee is making distributions of the $392,000 surplus and the trustee has no record of the Palm claim. If this is not taken care of the $392,000 will be lost to other creditors.

*Markoff Dec.*¶17, Ex. 9.

    Debtor Response:  Undisputed.

44.     During the period from January through May 2017, Palm communicated with Trustee in an effort to obtain the surplus funds. *Frcek Dec.* ¶39, Ex. 34.  On June 1, 2017, Palm received the surplus proceeds from Trustee Corps in

the amount of $392,779.74 and sent an email to Peter Hoffman advising that Palm had applied that amount against the Autopsy Loan. For the first time, Peter Hoffman suggested that amount should have been applied to Susan's loan. *Frcek Dec.* ¶40, Ex. 35; *Markoff Dec.* ¶17, Ex. 9.

<u>Debtor Response</u>:  Undisputed except the phrase "For the first time" which is disputed. See Debtor SSUMF A11 and evidence cited.

45.    Palm never agreed that monies received from the DOT on the Queens Road Property could be used for a payment against a loan made by AMAG. *Markoff Dec.* ¶18.

<u>Debtor Response</u>:  Undisputed to the extent AMAG claims there was no formal contract but immaterial.

STILLMAN & ASSOCIATES

By: _____

**PHILIP H. STILLMAN (#156861)**
3015 North Bay Rd., Ste. B
Miami Beach, Florida 33140
Telephone: (888) 235-4279
Email: pstillman@stillmanassociates.com

**CONGENI LAW FIRM, LLC**

*/s/ Leo D. Congeni*

By: _____

**LEO D. CONGENI (#25626)**
650 POYDRAS STREET, SUITE 2750
NEW ORLEANS, LOUISIANA 70130
Telephone: (504) 522-4848
Facsimile: (504) 910-3055
Email: leo@congenilawfirm.com

***Attorneys for Royal Alice Properties LLC***

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing *Statement* was filed on September 18, 2020,

resulting in service via the Court's CM/ECF system as follows:

Leo D. Congeni on behalf of Plaintiff Royal Alice Properties, LLC
leo@congenilawfirm.com, michelle@congenilawfirm.com

John F. Kurtz, Jr on behalf of Defendant AMAG, Inc.
jkurtz@hawleytroxell.com

Richard W. Martinez on behalf of Defendant AMAG, Inc.
richard@rwmaplc.com, claire@rwmaplc.com

*/s/ Leo D. Congeni*

_____

LEO D. CONGENI