UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | * | CASE NO.: 19-12337 |
| | * | |
| ROYAL ALICE PROPERTIES LLC | * | SECTION "A" |
| | * | |
| Debtor | * | CHAPTER 11 |
| | * | |
| ************************************ | | |
| | * | |
| ROYAL ALICE PROPERTIES LLC | * | |
| | * | |
| Plaintiff | * | ADV. NO.: 19-01133 |
| v. | * | |
| | * | |
| AMAG, INC. | * | |
| | * | |
| Defendant | * | |
| ********************************************* | | |

# **SUPPLEMENTAL DECLARATION OF PETER M. HOFFMAN IN OPPOSITION TO DEFENDANT AMAG INC'S MOTION FOR SUMMARY JUDGMENT**

I, PETER M. HOFFMAN, declare as follows:

1. I am an authorized representative of Debtor Royal Alice Properties LLC's ("Debtor") and file this Supplemental Declaration in opposition to Defendant AMAG's ("AMAG") Motion For Summary Judgment ("AMAG MSJ") [ECF No. 51] and AMAG's Rule 56.1 Statement ("AMAG 56.1 Statement") [ECF No. 53]. I have personal knowledge of the matters set forth herein and can testify competently to each if called as a witness.

2. All payments made by Seven Arts Entertainment Inc. ("SAE") or its affiliates, as stated in AMAG's 56.1 Statement 42, on the "Autopsy Loan," as defined in AMAG's 56.1 Statement 35 and attached as Exhibit 27 to the Declaration of Robert Frcek filed in support thereof, were made by SAE and not by me. As a result, these payments were not made by me, for purposes

1

of CAL. CODE CIV. PROC. §360, as a "party to be charged" under my Guaranty of the Autopsy Loan, as defined in AMAG's 56.1 Statement 36 and attached as Exhibit 28 to the Frcek Declaration.

3. SAE and its affiliates and I were in material breach of the Autopsy Loan on or about November 27, 2008 when the Autopsy Loan was not paid as required by the Autopsy Loan ¶3b. As a result of this breach of the Autopsy Loan and Guaranty, the four-year statute of limitation provided under California law for breach of a written contract first accrued and began to run for purposes of CAL. CODE CIV. PROC. §360.5 on November 27, 2008. AMAG improperly applied $392,779.75 of proceeds from the foreclosure sale of my home to the Autopsy Loan on June 1, 2017 which is more than eight years after first accrual of the California limitation period for breach of a written contract.

4. My Autopsy Guaranty and all my other guarantees to Palm Finance Corp. ("Palm") related to film loans which had been settled between Palm and SAE and all film collateral assigned to Palm in satisfaction of those loans pursuant to a Loan Workout Agreement and Assignment Agreement dated August 28, 2014 ("Workout"), true correct and authentic copies being attached as Exhibits 1 and 2 hereto.

5. I believed and stated to AMAG and Palm that the value of the film and other assets transferred to Palm were sufficient to satisfy all my then existing guaranties or other obligations to Palm. At no time since August 28, 2014 has Palm sought to enforce any such guaranties of other obligations against me or my assets. Attached as Exhibit 3 are true, correct and authentic copies of emails sent by me to Palm setting forth my basis for stating that my obligations under any guaranties including the Autopsy Guaranty.

6. AMAG insisted that Susan Hoffman acquire 36,625 shares of preferred stock of SAE ("SAE Preferred Stock") as a condition to AMAG's extension of credit in the Promissory Note and Loan Agreement dated July 31, 2013 ("AMAG Loan") attached as Exhibits 1 and 2 to the Declaration of Susan Hoffman filed in support of Debtor's Motion For Summary Adjudication [ECF No. 56].

7. The SAE Preferred Stock was worthless when acquired by Mrs. Hoffman. I believed that I could (a) authorize an amendment of the conversion ratio of the SAE Preferred Stock into three to four times the amount of SAE common stock permitted by the conversion ratio set forth in the SAE Preferred Stock and (b) thereby induce SAE's investment bankers to agree to sell such SAE common stock on NASDAQ for amounts sufficient to reimburse Mrs. Hoffman for the $366,250 purchase price for the SAE Preferred Stock demanded by AMAG as a condition to extension of credit in the AMAG Loan.

8. My plan to amend the terms of the worthless SAE Preferred Stock to give it some material value were not realized. SAE's investment bankers determined that SAE common stock was not then saleable on NASDAQ in any material volume sufficient to permit investment bankers to convert the SAE Preferred Stock at any conversion price and sell sufficient stock to make any material payment towards the purchase price of $366,250 demanded by AMAG. The SAE Preferred Stock was worthless on July 31, 2013 because the SAE common stock was worthless on July 31, 2013.

9. Attached as Exhibit 4 is a true, correct and authentic copy of the Deposition of Steven Markoff taken by Debtor on August 27, 2020. Pages 31-35 and 40-49 confirm my testimony that Palm and AMAG are part of a single business enterprise owned, controlled and managed by Mr. Markoff.

4

I hereby declare under penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct. Signed at New Orleans, Louisiana on September 18, 2020.

*/s/ Peter M. Hoffman*

_____
Peter M. Hoffman

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing *Declaration of Peter M. Hoffman In Opposition To The Motion For Summary Judgment* filed by AMAG Inc was served on AMAG, Inc. through counsel of record, Richard W. Martinez, 3500 W. Hullen St. Metairie, LA 70002, via email and U.S. mail, postage prepaid and properly addressed, on the 18th day of September, 2020.

                                                                          _____
                                                                          LEO D. CONGENI